ANNA P. ROSENBAUM, by her next friend,

*v.*

JOSEPH S. GARRETT.

[Filed September 16th, 1898.]

1. A testamentary trust in personalty is to be construed according to the law of the testator's domicile.

2. A testator domiciled in one state gave a fund to a trustee domiciled in another state, for the use of a married woman, free from the control of her husband.—*Held,* that as the bequest created an active trust, under the law of the former state, the trustee is thereby empowered to hold the *corpus* of the fund during the existing coverture of the *cestui que trust.*

Heard on bill and answers.

The bill is filed by a *cestui que trust* to compel her trustee to transfer to her the trust property. The bill also asks for an injunction restraining the trustee from taking any proceedings in any other court, in this or any other state, to surrender his trust, or from doing any other act in relation to the trust fund, except such acts as shall be necessary to protect the same.

The bill sets out that William Coffin, of Philadelphia, Pennsylvania, died in 1872, leaving a will, which was probated in Philadelphia, and afterwards in Camden county, New Jersey, in which will are the following bequests:

"To my sister, Mary E. Reybold, $600 per annum during her life, and, after her death, five thousand dollars to Joseph E. Garrett in trust for her daughters, of which sum one thousand dollars is for the use of Matilda Garrett, his wife, and four thousand dollars for the use of Anna E. Rosenbaum, free from the control of her husband."

The bill then sets out that the said Mary Reybold is deceased; that in June, 1894, shortly after her death, the Guarantee Land, Insurance and Trust Company of Philadelphia, trustee under the will of Coffin, paid over to said James E. Garrett, as trustee

Rosenbaum *v.* Garrett.

for Anna P. Rosenbaum, the sum of $4,000, less a collateral inheritance tax; that Garrett, although requested by Anna P. Rosenbaum to pay over to her the said sum, or to assign to her the securities purchased therewith, refused to do so; that Garrett was, at the time he was appointed trustee under the will, as well as when he was paid the said sum, and still is a resident of New Jersey; that William Coffin, previous to 1872, had been for many years a resident of New Jersey, and died seized of real estate in New Jersey; that Anna P. Rosenbaum is married to one William S. Rosenbaum.

The answer resists the prayer for injunction by setting up a proceeding in Pennsylvania, already commenced at the time of the filing of this bill, and resists the prayer for relief by setting up that the rights of the parties under the trust are to be measured by the law of Pennsylvania, which law the answer sets out.

There are both an answer and an amended answer. The facts set up in these answers, in respect to the first point, are these: That before the filing of this bill, the trustee filed his account, showing the condition of the trust estate from the date when the trustee received the same, with the orphans court of the county of Philadelphia, as he was required to do by the laws of Pennsylvania, to which he was amenable; that he filed his account as trustee aforesaid, as well for the purpose of having his account passed, as also for the purpose of having determined, in the jurisdiction in which he was advised had control of the matter, the *status* of the trust and the character of the trustee in relation thereto as trustee, as well as the extent of the control, if any, which the *cestui que trust* may have over the trust fund; that the account was duly advertised for presentation to the said orphans court, on January 3d, 1898, and a copy thereof was sent to the *cestui que trust*, and that immediately thereafter the complainant filed this bill.

The amended answer sets up the filing of the trust account; that the trustee gave to the complainant the notice of such application which is required to be given by the laws of Pennsylvania and the practice of the orphans court; that the application and the proceedings taken by defendant in the said orphans

court, in its regular course, raised and required a determination of the question whether or not the principal of the trust estate should remain in the custody of the defendant as trustee, to be used by him for the purposes indicated by the testator's will, or whether the said principal should be paid over to the complainant as *cestui que trust*, and this defendant be discharged as trustee; that said application has been heard and determined by the said court which has rendered an opinion upon the questions raised before it, which opinion is annexed to the answer.

In respect to the prayer of the bill that this court shall order the trustee to transfer the trust property to the complainant, the answers aver that the law of the testator's domicile must control all questions as to the *status* of the trust fund and its disposition; that the trust is known under the law of said state as " a married woman's separate use trust," the principal of which is not subject to the control of the *cestui que trust* during the lifetime of her husband.

*Mr. Thomas B. Hall*, for the complainant.

*Mr. Norman Grey* and *Mr. A. H. Wintersteen*, for the defendant.

REED, V. C.

The complainant filed her bill upon the theory that Garrett, her trustee, holds the fund bequeathed to him, in trust for her, as a passive trustee, and that he is bound, upon her request, to transfer the property to her, or to such person as she may name. The bill, as already stated, prays that the trustee may be decreed to surrender the trust property to the complainant, and also that he may be restrained from taking any proceeding in any other court to have the rights of himself and his *cestui que trust* settled.

The right of this court to entertain suits of this character, when the parties are within the jurisdiction of the court, even when the trust was created in a foreign state, is entirely settled. *Mead* v. *Merritt, 2 Paige 404; White* v. *White, 7 Gill & J. 208;*

Rosenbaum *v* Garrett.

*Chalmer* v. *Hack, 19 Me. 124; Woodward* v. *Schatzell, 3 Johns. Ch. 412.*

It is also settled that one court having obtained jurisdiction over the parties to a controversy may enjoin the parties from proceeding in the courts of a foreign state. *Story Eq. Jur.* §§ *899, 900; 1 Perry Trusts* § *72.*

In respect to the prayer for an injunction it is obvious that the trustee does not contemplate instituting any new proceeding in the courts of Pennsylvania. All that he claims is that the proceeding already taken there to settle his account as trustee involves a settlement of the rights of the parties to the possession of the *corpus* of the estate.

It is also apparent that if the proceedings already taken in Pennsylvania involve the determination of this question, that there exists no special equity which would justify this court in exercising the rarely-exerted power of restraining parties from pursuing an already commenced proceeding in another jurisdiction.

It is clear to my mind that no injunction as prayed should be awarded.

On the other hand the query arises whether the present suit should not be suspended or abated by reason of the pendency of the proceedings in the Pennsylvania tribunal. This is a matter of discretion. It is clear that the matters set up in the answer, intending to exhibit the pendency of a proceeding in Pennsylvania between the same parties and involving the same subject-matter, cannot operate as a plea in abatement. The court will, however, sometimes stay the domestic suit until the suit in a foreign state is disposed of. *1 Dan. Ch. Pl. & Pr.* (*marg.*) *815; Kerr* v. *Willetts, 19 Vr. 78.*

It is observable that in the cases where this course has been taken both suits were commenced by the same party.

I do not think that the matters set up in the answer show so clearly that the question involved in the present suit could be determined in the proceedings for accounting in Philadelphia that the present suit should be suspended. There is, however, not only an answer but an amended answer. The amended

answer sets up that the question whether the *corpus* of the trust fund should be paid over to the *cestui que trust* has been heard and determined by the foreign tribunal, which court rendered an opinion, a copy of which is annexed to the amended answer. The opinion is that, under the law of Pennsylvania, the *cestui que trust* is not entitled to receive the trust fund. The opinion was obviously rendered after the bill in the present case was filed. Nevertheless, if it convincingly appeared that a decree had been already made by a court having jurisdiction over the parties and the subject-matter, this suit would be dismissed. Such a decree can be set up in an answer as well as by a plea. *1 Dan. Ch. Pl. & Pr.* § *661; Davoue* v. *Fanning, 4 Johns. Ch. 199.* But the answer does not aver that any decree or order has been made in the foreign suit. The opinion of the court possesses no efficacy as a bar unless it is evidenced in a court of record by a record, which the written opinion is not. Whether, apart from the fact just stated, a decree made in accordance with the opinion would be binding upon the *cestui que trust,* is a question not easily answered.

The probate court of Philadelphia had the power, I think, to construe the will which it had probated and to settle the power of the testamentary trustee, although he resided in a foreign state. *Chase et al.* v. *Chase et al., 2 Allen 101.* But whether such construction rendered, not upon a bill filed for that purpose but as an incident of an accounting by the trustee under the conditions set out in the amended answer, would be a finality, is doubtful. Assuming, however, that the question is an open one and that we are free to try the rights of the parties without any restrictions, I do not think that the complainant is entitled to the relief she seeks.

The counsel for complainant admits that the trust created by the will of William Coffin, by the terms of which $4,000 is given to Garrett in trust for the use of Anna E. Rosenbaum, free from the control of her husband, is, by the law of Pennsylvania, regarded as an active trust, and the *cestui que trust* has no right to the possession of the property so long as her condition of coverture exists. That this is the law of Pennsylvania is set

up in the answer and so stands as a fact in the cause, and is entirely settled by the decisions of that state as they are collected in the opinion attached to the answer.

As already observed, the will was executed in Pennsylvania by a testator domiciled in that state at the time of his death. The general rule is that, as respects the personal property of a testator, the validity and meaning of the will are to be determined by the law of the domicile of the testator. *1 Jarm. Wills. (R. & T. ed.) 3 ; Theob. Wills (4th ed.) 3, 4 ; Story Confl. L. \*470 ; 3 Encycl. L. 636 ; In re Trufort, 36 Ch. Div. 600.*

In *Trotter* v. *Trotter, 4 Bligh (N. S.) 502,* Lord Lyndhurst said: "There are certain rules of construction adopted by the court, and the expressions which are made use of in a will and the language of a will have frequent reference to those rules of construction, and it would be productive, therefore, of the most mischievous consequences and in many instances defeat the intention of the testator if those rules were to be altogether disregarded."

And in *Harrison* v. *Nixon, 9 Pet. 483, 504,* Judge Story writes: "They [wills] are supposed to speak the sense of the testator according to the received law and usages of the country where he is domiciled, by a sort of tacit reference, unless there is something in the language which repels or controls such a conclusion. In regard to personalty in an especial manner, the law of the place of the testator's domicile governs the distribution thereof, and will govern in the interpretation of wills thereof unless it is manifest that the testator had the laws of some other country than his own in view."

The exercise of powers conferred by a testator is controlled by the law of the testator's domicile, both as to the execution of the power and the interpretation of it. *Bing. App. Cas. 64 Pa. St. 345 ; Sewall* v. *Wilmer, 132 Mass. 131 ; Tatnall* v. *Hankey, 2 Moo. P. C. 342.*

Now, that the language of a will creating trusts in property stands upon the same footing as any other indication of a testamentary disposition of property seems too plain for discussion.

The power of the trustee over the personalty and the extent

of the right of the *cestui que trust* to it, are to be ascertained by reading the will in connection with the law of testator's domicile, unless it is manifest that the testator had in mind the law of some other state.

The insistence of the counsel for the complainant is that it must be concluded that the testator intended that this trust should be administered and construed in accordance with the laws of New Jersey, from the fact that he named a trustee who was at the time the will was made, as well as at the time of the testator's death, a resident of New Jersey.

It is also assumed in the argument that the *cestui que trust* was also at the same time domiciled in this state. But it only appears in the bill that it was filed by her as a resident of New Jersey. Where she resided when the will was made and when the testator died, does not appear.

But if both trustee and *cestui que trust* were domiciled in New Jersey at the dates mentioned, the result, in my judgment, is the same. Neither condition of fact would fix upon the testator an intention that the trust should be construed by the law of New Jersey.

There is a line of cases in which trusts are so clearly to be administered in a foreign state that many questions which would be otherwise determined by the domicile of the testator, will, in these instances, be determined by the *situs* of the trust. These are cases of gifts to charities established in a country or a state other than the domicile of the testator.

The rule, as stated in Mr. Barr's work on *International Law p. 832,* is this:

"When a testator has appointed a continuing trust with a legal habitation in another country, *e. g.,* for the establishment of a system of charitable education there, then the law of that country will regulate the conduct of the trustees appointed for the management of the bequest, and will interpret according to its own rules the succession of the original trustees prescribed by the testator; if he has used the word 'heirs' of the original trustees, the law of the place of administration will read the word 'heirs' in its own sense."

The cases cited in support of this statement are *Prevost of Edinburgh* v. *Aubrey, Amb. 236; Attorney-General* v. *Lepine, 2 Swanst. 181; Emery* v. *Hill, 1 Russ. 112.*

So, it was held in *Chamberlain* v. *Chamberlain, 43 N. Y. 424,* that where there was a bequest to a foreign charity, the money would be ordered paid over to the proper parties, leaving the courts of the state where the charity is to be established to provide for its administration.

The construction of the will, however, is controlled by the law of the testator's domicile.   To the same effect is the case of *Burbank* v. *Whitney, 24 Pick. 154.*

This line of cases does not seem to afford much assistance to the attempt to withdraw the construction of the present trust from the control of the law of the testator's domicile.   It was apparent in those cases that the testator intended that the bequests should be used by the charitable organizations in the same way that they used all of their property.

A general bequest to such a charitable body would import that the fund was to be employed and administered for the general purposes of the charity by the persons and in the manner provided for by its own laws and regulations.

These cases deal with a class of trusts quite different from the ordinary trust created by a gift to one person for the use of another.

The former class of trustees has a permanently-fixed domicile and a regularly-organized system for the administration of its funds.   The latter class has not.

These cases deal with matters involving the administration rather than the construction of trusts, but the question in the case in hand is primarily one of construction.

The testator, in creating the trust, has employed certain words which by the law of the place of his domicile affect the power of the trustee and the extent of the right of the *cestui que trust* in the trust fund.   The testator declared that the complainant should have the use of the trust fund " free from the control of her husband."

The courts of Pennsylvania have adopted the rule enunciated by Chancellor Kent in his great opinion delivered in the case of *Methodist Episcopal Church* v. *Jaques, 3 Johns. Ch. 78.* Chancellor Kent's opinion was that a wife held her separate

13

property with only the degree of power to control and dispose of the same which is expressly given her by the instrument creating the separate estate; that the married woman is not to be deemed a *feme sole* for all purposes in respect of her separate property, and is not left in a position to be cajoled out of it by her husband or stripped of it by her creditors. Therefore, whenever it appears that property left to a wife is to be free from marital influence, the courts of Pennsylvania hold that it is to be preserved in the hands of a trustee during the period of coverture (*Perry* v. *Boileau, 10 Serg. & R. 208*), although the trustee has no active duties to perform. *Lancaster* v. *Dolan, 1 Rawle 247.*

The present bill was filed in this court obviously because it was supposed that the law of New Jersey is more favorable to the claim of the complainant, for the rule prevailing in Pennsylvania has not been adopted here. The decision of Chancellor Kent in *Methodist Episcopal Church* v. *Jaques, supra,* was reversed by the court of errors, that court holding that a married woman's power to dispose of separate property given to a trustee for her use, free from the debts and intermeddling of her husband, was absolute and she could give it to her husband if she so chose. This view of the power of a married woman over her separate property was adopted by this court in *Leaycraft* v. *Hedden, 3 Gr. Ch. 512.* The modern doctrine of the British courts of equity also is that the creation of a separate estate in a married woman, unless coupled with a restraint upon alienation or anticipation, confers an absolute interest in the equitable estate. Whether the interest of the married woman is limited to a right to receive the income during her coverture, or she has a right to receive the entire estate, depends upon whether the trustee has any active duties to perform in respect to the trust estate. If he has not, then he can be called upon to convey the estate to the *cestui que trust* or to her appointee, even if such appointee is the husband of the married woman.

So it is assumed that by the law of this state this trust, the trustee having no active duties to perform, is a passive trust and the trustee can be called upon to transfer the *corpus* of the trust fund to whomsoever the *cestui que trust* may designate.

· It is clear that if the trust now in question had been created in this state, and at a time preceding the existence of our statutes giving a married woman a separate property in bequests and devises to her, this would have been its effect. It may, perhaps, be queried whether such a trust, created since the enactment of those statutes, should receive the same construction, for the words used are now useless unless the testator had in mind an intention to guard the married woman in all events against the force of marital persuasion or brutality.

If, however, as I think, the question in hand is one of construction and therefore the testator is presumed to have used the words creating the trust in view of the law of the state of his domicile, the rights and duties of the parties are plain.

The trustee is entitled to hold the *corpus* of the fund during coverture.