[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 171 
The complaint seeks instruction regarding the disposition of a welfare fund created and arising out of a contract between an employer and a union. A contract regulating the wages, hours and other conditions of employment for all employees of L.E. Carpenter Co., at its Newark and Wharton plants was entered into between the employer and Artificial Leather and Rubber Goods Workers Union, Local #20389, for a term of one year from September 28, 1946. Simultaneously therewith, a supplemental agreement was entered into between the employer and the union creating a welfare fund contributions to which consisted of payments "by the Employer of 5% of the total wages of the employees, excluding the bonus moneys earned. It is understood that such payments shall be effective April 1, 1946, and shall continue in full force and effect for the duration of this agreement."
Under the welfare agreement, the trustees were to be four in number; two designated by the accredited bargaining representative *Page 172 
of the qualifying employees, and two nominated, selected and appointed by the employer. The plaintiffs are the trustees representing the employees; the defendants are the cotrustees nominated by the employer. Other defendants are the union and some individual employees.
The contract of employment which terminated on September 28, 1947 has not been renewed. By virtue of such termination, two things happened, viz.; contributions to the welfare fund ceased, and the number of beneficiaries, namely, employees qualified to participate in the fund, became fixed.
There remains the sum of $25,643.40 on deposit in the National Union Bank of Dover, N.J., to the credit of the four trustees, representing the balance of the welfare fund on the date of the termination of the agreement. By this proceeding, instruction is sought respecting the disposition of the fund.
By order of this court, Federal Labor Union #24376, which is the present collective bargaining agent of the production and maintenance employees of the employer, and a number of individual defendants who are present employees, have been permitted to intervene.
The parties agree that this Court has inherent jurisdiction over trusts, the subject matter of this suit. Feld v.Kantrowitz, 102 N.J. Eq. 307 (E. A. 1927). It is conceded that the disposition of the fund depends on the nature of the trust created by the welfare agreement; whether active or passive. If it is passive, it should be terminated and the corpus distributed. If it is not passive the Court cannot decree termination. Rosenbaum v. Garrett, 57 N.J. Eq. 186 (Ch.
1898), Beideman v. Sparks, 61 N.J. Eq. 226 (Ch. 1901), affirmed 64 N.J. Eq. 374 (E. A. 1902), Supreme Lodge, K.of P. v. Rutzler, 87 N.J. Eq. 342 (E. A. 1917), Zelley v.Zelley, 101 N.J. Eq. 37 (Ch. 1927), Martin v. Martin,106 N.J. Eq. 258 (Ch. 1930).
In construing the trust, the court must, of course, seek to effectuate the object and intention of the parties. Woods v.Woods, 102 N.J. Eq. 502 (Ch. 1928), reversed105 N.J. Eq. 205 (E. A. 1929), but not on this point. DcBrabant v.Commercial Trust Co., 113 N.J. Eq. 215 (Ch. 1933). An *Page 173 
examination of the agreement in the instant case leads to the conclusion that the trust created is active.
Under the agreement, the trustees in their sole and complete discretion were to make the funds available "to qualifying employees for pensions, annuities, death, accident, sickness and health benefits, and for the payment of hospital and medical services." Pursuant to the agreement, the trustees duly provided hospitalization insurance, group life insurance in the amount of $2,500 on the life of each employee, accidental death and dismemberment insurance in the same amount, accident and health insurance for occupational disability of $30 per week, and surgical insurance for employees and their dependents on a schedule basis with a maximum of $150. The trustees, who were to hold office for one year and until their successors should qualify, had complete and sole discretion to select the financial institution as the custodian of the funds, insurance policies, securities and other documents, and for the keeping of the records in connection therewith, and to pay such custodian reasonable compensation therefor. Title to and possession of the contracts or policies of annuity or insurance were to remain in the trustees until maturity. They had the right to assign such contracts of annuity or insurance to any qualified employee entitled thereto upon termination of employment. They also had the right to use and invest the funds pursuant to law.
The foregoing excerpts from the agreement indicate quite forcefully that the trust was an active trust and that the trustees had duties to perform. They were not merely custodians of the fund. The agreement expressly provided that in the event of termination "any and all unexpended sums of money in the possession of the trustees * * * shall be and remain the sole and exclusive property of the employees entitled to the benefits of this agreement, jointly, without exception or allocation of any specific part thereof to any particular employee, or group of employees, and in no event shall the company be entitled to the refund of any portion of such unexpended sum, if any." The express provision of the contract precludes distribution *Page 174 
of the fund among "any particular employee or group of employees."
The sole question remaining is who are the employees entitled to benefits. The agreement governing the terms and conditions of employment provides "2. Employees Covered. This agreement shall cover all employees, including maintenance men, on hourly payroll at the Newark and Wharton plants of the company." The welfare agreement provides as follows: "Article I. * * * (1) Qualifying employees means all persons in the employment of the Employer on job classifications, groups and categories, who, as of the date of this agreement are covered by and entitled to the protection and benefits of a written agreement between the parties hereto dated December 11, 1946, relating to wages and working conditions of such employees of L.E. Carpenter Co., who are either now in the employment of the Employer or may be hereafter employed. * * * The reference to the said agreement between the parties hereto is for the sole purpose of specifying and determining the groups and classifications of employees entitled to the benefits of this agreement, and membership in the union is not a necessary condition to being entitled to the benefits hereunder." Under Article IV it was provided that in the event that any qualifying employee should for any reason cease to be such, his rights and benefits in the fund were to cease and terminate "with the express proviso, however, that if any contracts or annuities or insurance or other protection of any kind or nature shall have been acquired for his benefit and then be in existence, there shall be assigned, transferred and set over to such employee all of the trustee's right, title and interest therein to the extent acceptable and permissible by the underwriters and by law."
The welfare agreement further provided that the trustees immediately upon their appointment determine the qualifying employees and certify their names and addresses to the employer; and thereafter make quarterly determinations and certifications. It further provided that "The Employer upon the termination of the employment of any qualifying employee shall forthwith notify the trustees in writing of such fact, giving *Page 175 
the name and address of such employee or employees. In the event the Employer is informed or otherwise acquires knowledge that any qualifying employee dies, is injured, becomes ill, or is in need of hospital or medical attention, the Employer agrees to forthwith notify the trustees of such fact."
I conclude that the funds, until exhausted, be held and administered for the benefit of the employees entitled thereto, in the same manner and to the same extent as though the agreement had not terminated. If the present trustees decline to continue in the performance of their duties, substituted trustees may be appointed.