Dufford *v.* Smith.

---

ANDREW DUFFORD, one of the executors of the will of GEORGE DUFFORD, deceased, appellant,

*v.*

CATHERINE S. SMITH, respondent.

1. Investments by trustees upon mere personal security are not regarded by the courts of this State as safe, prudent or proper; consequently, if they be made, they are at the risk of the trustees, who must personally answer for any loss that may result from them.

2. Where a trust fund is created by a will, which directs that the interest from it shall be paid to one for life, and at her death to her children for their

lives, and that at the death of her children the principal shall be divided among her grandchildren, and no means are provided for the payment of taxes upon the *corpus* of the fund, the yearly taxes are properly payable from the income.

3. It is the duty of trustees to keep accounts, and to take and preserve vouchers for payments they make. The burthen of proving a matter of discharge in their accounts is upon them, and obscurities and doubts, which they should have guarded against, must be resolved against them.

4. Where trustees have mismanaged their trust, kept no accounts, taken few and unsatisfactory vouchers, and put their *cestuis que trustent* to unnecessary expense and trouble, they will not be allowed commissions.

On appeal from a decree of the orphans court of Morris county, upon exceptions to an account of trustees under a will.

*Mr. Edmund D. Halsey* and *Mr. Henry C. Pitney*, for the appellant.

*Mr. George T. Werts*, for the respondent.

THE ORDINARY.

George Dufford died in June, 1864, leaving a will, which was proved by the executors named in it on the 5th day of August, in the same year.

By this will the testator made various devises and bequests, and among them the following:

"*Second.* I give and bequeath unto my beloved wife, Elizabeth Dufford, the interest of six thousand dollars, to be paid to her yearly by my executors hereinafter named during her lifetime. * * *

"*Third.* I give to my son, George Dufford, after the decease of my wife, the interest on six thousand dollars, bequeathed to her, during his lifetime, and after his death, to be equally divided among his lawful children during their lifetime, and after their death, then the six thousand dollars to be equally divided among their lawful children; provided, and it is hereby ordered, that in case said George Dufford die without lawful issue, then the above-named six thousand dollars is to be equally divided among my children.

"*Fourth.* I give and bequeath to my son, William Dufford, the sum of four thousand dollars, to be paid to him by my executors, as soon as conveniently can be after my decease.

"*Tenth.* I give and bequeath to my daughter, Catherine Sophia Smith, the interest on six thousand dollars, to be paid to her annually by my executors

during her lifetime, and after her death, the said interest to be divided equally among her lawful children during their lifetime, and after their death, the said six thousand dollars to be divided equally among their lawful children; provided, that if the said Catherine Sophia Smith die without lawful issue, or if she have lawful children, and they die without lawful issue, then said six thousand dollars to be divided equally among my children.

"*Eleventh.* I give and bequeath to my grandson, Gilbert Dufford, son of my son, Leonard Dufford, one thousand dollars, to be paid to him by my executors when he arrives at the age of twenty-one years."

The will then directed that the executors should sell the testator's undisposed-of real and personal estate, and divide the proceeds of sale equally among his children, and he then appointed the testator's sons, Elijah, Henry and Andrew, its executors.

In November, 1865, the executors' first account, exhibiting a cash balance in their hands of $22,646.47, was allowed by the orphans court.

In June, 1888, in obedience to a citation, which was issued at the instance of the respondent, Catherine Sophia Smith, a second account was presented, to which the respondent filed the exceptions which inaugurated this litigation.

By this second account, the executors charge themselves with the balance found against them on their first accounting, and pray allowance for the payment of the legacies of $4,000 to William Dufford, and $1,000 to Gilbert Dufford, and for the distribution of $5,646.47 among the nine children of the testator, that is, $705.81 to each of them, and thus show a balance of $12,000 remaining in their hands.

They then state, that $6,000 of this balance is held by Andrew Dufford, the appellant, as trustee for Elizabeth Dufford, and charge themselves with interest on it, at the rate of seven per cent., from November 13th, 1865, to April 1st, 1878, and at six per cent. from April 1st, 1878, to August 12th, 1886, the date of Elizabeth Dufford's death, and pray allowance for payment of the interest thus charged.

They also state, that the other $6,000 of the $12,000 balance is retained by the accountant, Henry P. Dufford, in trust for Catherine Sophia Smith, and that of that $6,000, $1,516.69 was money due upon notes made by Henry P. Dufford to the testator

in his lifetime, and $2,604.67 was represented by notes of Dufford & Wert, a firm composed of said Henry P. Dufford and John C. Wert, a son-in-law of testator, neither of these sums having been collected by the executors.

They then charge themselves with interest at seven per cent. on the $6,000 from November 13th, 1865, to April 1st, 1878, and with interest on it at six per cent. from April 1st, 1878, to April 1st, 1885, and pray allowance for the payment of the interest to Catherine Sophia Smith, their *cestui que trust.*

The exceptions to this account raise the following questions for consideration :

Whether the investments of the trust fund were proper.

Whether, if they were not proper, all the executors are liable for losses they occasion the trust fund.

Whether taxes upon the principal of the trust fund should have been paid from the interest, which the will gave to the *cestuis que trustent.*

Whether the interest upon the trust fund at seven per cent. should have continued to July 4th, 1878, the time when the legal rate of interest was changed from seven to six per cent., and

Whether the executors should be allowed commissions.

By their first account, the executors made it appear that they had a balance of $22,646.47 in cash. When their account was settled they were charged with that sum as cash, and thereupon, treating it as such, they proceeded to pay two legacies of $4,000 and $1,000, respectively, to distribute $5,646.47, and to retain $12,000 to answer the trusts created by the will.

It was clearly their duty, under the will, to invest two funds of $6,000 each, so that they would yield interest. These sums were to be set apart before it could be known what the residue, to be distributed, would be. Unless they were completely had, there would be no residue.

Under such circumstances, the distribution of the residue proclaimed the trust funds to be secured.

Now, it appears that more than $4,000 of the balance, which was represented to be cash, consisted of the indebtedness of one of the executors to the estate, evidenced in part by his own

promissory notes. The evidences of that indebtedness were handed over to him, together with sufficient money to increase his indebtedness to $6,000, he agreeing, with his co-trustees, to pay his sister the yearly interest provided for her by the will.

He was not required to pay his notes, and it was known to his co-trustees that he intended to invest the money which they paid him in his private business.

It is impossible, in view of these circumstances, to escape the conclusion that this transaction was tantamount to, and must be regarded as, a deliberate investment of the $6,000, in which the respondent is immediately interested, upon the mere personal security of one of the trustees. Such an investment is not recognized by the courts of this State as safe, prudent or proper, or one that trustees will be justified or protected in making.

" It is a well-settled rule," said Chancellor Green, sitting as ordinary in *Vreeland v. Vreeland's Adm., 1 C. E. Gr. 512, 530,* " both in England and in this country, that if executors, administrators or other trustees, loan money without due security, they are liable in case of loss. Loans made on private or personal security are at the risk of trustees, who are personally answerable if the security prove defective. To afford complete indemnity to the trustees against the hazard of responsibility for losses, the investments must be made in government stocks, or upon adequate real security."

This rule is well established in our courts. *Gray v. Fox, Sax. 259; Halsted v. Meeker's Exrs., 3 C. E. Gr. 136; Lathrop v. Smalley, 8 C. E. Gr. 192; Ashhurst v. Potter, 2 Stew. Eq. 625; Ward v. Kitchen, 3 Stew. Eq. 31; Tucker v. Tucker, 6 Stew. Eq. 235; Williams v. Williams, 8 Stew. Eq. 100; Sherman v. Lanier, 12 Stew. Eq. 249; Craven's Case, 16 Stew. Eq. 416.*

This is not the case where trust property comes to the hands of one of several trustees and is by him converted to his own use or wasted, without the fault or co-operation of the other trustees. Nor is it the case where the question is, whether the waste and conversion could have been prevented by ordinary watchfulness by the co-trustees. It was the voluntary resignation of the trust fund to one of three trustees, with the purpose to shield him from

Dufford *v.* Smith.

the immediate payment of a greater portion of it, and to enable him to make use of it in his private business without giving security for it, and that, as I have said, I consider to be equivalent to accepting his personal responsibility as an investment for the trust funds.

It is clear that all three of the executors are chargeable for any loss that such an investment may have occasioned. In their accounting, they must be charged with the entire fund, with interest.

The interest should be calculated at seven per cent. to July 4th, 1878, and after that at six per cent. By a supplement to the act against usury, approved February 26th, 1878, the legal rate of interest was reduced from seven to six per cent. That supplement did not designate a time when it should go into operation, hence the time of its taking effect, in virtue of the general act concerning statutes (*Rev. p. 1122 § 13*), was July 4th, 1878.

It appears by the proofs, that the executors paid the taxes upon the *corpus* of the trust funds in their hands, and deducted the amounts thus paid from the income or interest of the fund. At first, Mrs. Dufford and Mrs. Smith protested against such deductions, but finally they acquiesced in them, and receipted in full for the interest, without specifying that deductions for taxes had been made.

The orphans court decided not to allow the deduction, so far as the fund in which the respondent, Catherine S. Smith, is interested is concerned. I will not consider the question as to the effect of the acquiescence of Mrs. Smith in the deductions.

An examination of the will exhibits that the testator's scheme was to create two funds of $6,000, which were to be invested. The income from them was to be paid to certain persons for life, and the principal was ultimately to be distributed to other persons. He did not provide means to pay the expenses incidental to the care and protection of those funds, hence, under familiar rules, the duty of providing such means fell upon those who, for the time being, were entitled to the income.

I understand this to be the settled law in this State. *Holcomb* v. *Holcomb, 12 C. E. Gr. 473; S. C. on appeal, 2 Stew. Eq. 597.*

The proofs satisfy me that interest upon $6,000 was paid to Mrs. Dufford to April 1st, 1878, at seven per cent., and thereafter to her death, on August 12th, 1886, at six per cent. From April 1st to July 4th, 1878, the rate should have been seven per cent.

I am also satisfied that Mrs. Smith was paid the interest upon the $6,000 in which she is immediately concerned, to April 1st, 1878, at seven per cent., and thereafter, to April 1st, 1884, at six per cent. From April 1st to July 4th, 1878, she should have been paid at the rate of seven per cent. per annum.

These differences in interest must be accounted for by the executors, with interest.

The testimony upon the question, whether Mrs. Smith was paid interest from April 1st, 1884, to April 1st, 1885, is loose and unsatisfactory. The trustees have neither vouchers nor accounts to show it. It was their duty to keep accounts and to take receipts. Payment of interest to a *cestui que trust* is a matter of discharge which the trustees must prove. The presumption as to the payment is against them, and obscurities and doubts, which they should have guarded against, must be resolved against them. *Blauvelt* v. *Ackerman, 8 C. E. Gr. 495, 502; affirmed on appeal, 10 C. E. Gr. 570.*

Under the proofs, I must hold that the interest for that year was not paid.

The remaining question is, Whether the executors shall be allowed commissions for their management of the trust funds.

Commissions are allowed as compensation for the faithful discharge of duty, and their rate, within fixed limits (*Rev. p. 776 § 109*), is determined by reference to the actual pains, trouble and risk involved in the performance of that duty.

In this case, the executors have shamefully disregarded the honorable position in which their father's will placed them. They have so acted that their sister and *cestui que trust* has not only been irregularly paid her income, but has been forced to importune first one and then another of them for it, and to meet

with frequent and expensive disappointments. No accounts have been kept. Few vouchers have been taken, and they are in most unsatisfactory state. The crowning misdeed was the deliberate placing of one-half of the $12,000 trust fund in the hands of a debtor trustee, who was in failing circumstances, without taking from him the least security.

The only pains and trouble the trustees appear to have taken, was to so act as to make it appear that that debtor is alone responsible for the loss of moneys that they all joined in confiding to him. I am most clearly convinced that no commissions should be allowed in this case. They have been refused where misdeeds of trustees have been less censurable than they are here. *Frey* v. *Frey, 2 C. E. Gr. 71; McKnight* v. *Walsh, 8 C. E. Gr. 136; S. C. on appeal, 9 C. E. Gr. 498; Blauvelt* v. *Ackerman, 8 C. E. Gr. 495; affirmed on appeal, 10 C. E. Gr. 570.*

The trustees were properly charged with costs in the accounting in the orphans court.

My conclusions upon these questions, because of my disagreement with the orphans court as to the deduction of taxes from the income, lead to the reversal of its decree, but, as I agree with it upon other and more important questions that were urged by the appellant, the reversal will be without costs.