MARY N. PYATT and SAMUEL D. KELLY, appellants,

v.

MARY E. PYATT, respondent.

1. As a general rule, a widow is not bound to support her minor children out of her own property, if they have means of their own, and she is entitled to indemnity out of their estate for the money expended by her on their maintenance, within proper limits.

2. If a widow, being the guardian of her minor children, maintains them as members of her family, and uses their money for that purpose, she will be deemed to have intended to charge their estate for their support, and all reasonable expenses therefor will be allowed her.

3. Where a guardian, after his ward attains full age, and before the accounts of his receipts and payments during the ward's minority are settled, continues to manage the property at the request of the ward, it is, in effect, a continuance of the guardianship as to the property, and the guardian must state and settle the entire account, embracing transactions after, as well as during, the minority, in a tribunal having jurisdiction of the guardianship.

4. Under the circumstances above stated, the orphans court has jurisdiction over the entire account, and this jurisdiction includes the power to ascertain what property of the ward remains in the guardian's hands at the time of accounting, and to decree and enforce the surrender and payment to the ward of such remnant.

5. After the ward has attained full age, and the guardian has ceased to have possession of, or control over, any property of the ward, subsequent dealings between the parties are not within the jurisdiction of the orphans court.

6. The statutes establishing and regulating the jurisdiction of the orphans court should be liberally construed.

On appeal from a decree of the prerogative court, based upon the opinion of the ordinary, reported in *17 Stew. Eq. 496.*

*Mr. Riee* and *Mr. A. H. Strong,* for the appellants.

*Mr. Adrain,* for the respondent.

The opinion of the court was delivered by

DIXON, J.

In April, 1887, the appellant Mary N. Pyatt was cited to account before the orphans court of Middlesex county, as guardian of her daughter, Mary E. Pyatt, and forthwith filed her account, charging herself with $435.78 received in December, 1878, and various small sums of interest amounting to $101.54 received subsequently, and praying allowance for $2,093.23, of which $1,872 was for board and maintenance of the ward from January 1st, 1875, to December 31st, 1886, at $3 per week. On exceptions filed by the ward, testimony was taken, the guardian being the only witness examined, and thereupon the orphans court allowed the account as presented. On appeal to the prerogative court, the ordinary disallowed all the credits claimed; and the guardian has now brought his decree to this court for review.

The facts proven are as follows: Samuel L. Pyatt died intestate, January 11th, 1868, seized of his homestead farm and possessed of some personalty, leaving his widow, the appellant, and four young children, of whom the respondent is the eldest. Letters of administration were granted to the widow and her father, and the widow and children continued to reside upon the homestead farm as one family, no dower being set off to her. On August 18th, 1874, the widow was appointed guardian of each of her children, and in December, 1874, she came into possession of her wards' distributive shares in their father's personal estate. The share of the respondent was $435.78. The guardian used the funds of her children in supporting them as members of her household, and when these were exhausted borrowed from her father, who was also surety on her guardianship bonds. She kept no account of her expenditures, and does not attempt to specify those made on behalf of each individual child. She swears, however, that the charge of $3 per week for the board and maintenance of the respondent is fair and reasonable, and that all the moneys received by her as guardian had been actually expended by her in maintaining her daughter. These statements

are uncontradicted, and there is no ground for doubting their truth.

The ordinary rejected the allowance claimed for the support of the ward during her minority, which ended October 5th, 1876, because he drew from the circumstances an inference that the guardian was supporting the ward as a member of her family, without expecting compensation therefor. But we deem that inference unwarranted. The actual use of the very moneys in her hands as guardian, to purchase the necessaries of life for the children, shows unmistakably that she was not intending to support them at her own expense. Indeed she seems not to have had any other resources for their maintenance. As a general rule, a widow is not bound to support her minor children out of her own property, if they have means of their own (*2 Kent 190*), and she is entitled to a complete indemnity out of their estate for the money expended by her on their maintenance within proper limits. *Bruin* v. *Knott, 1 Phil. 571 ; Matter of Bostwick, 4 Johns. Ch. 104.* It necessarily follows, that when she has cast upon her as their guardian the duty of maintaining them and has actually used their money for that purpose, she must be considered to have meant to charge their estate with their support, and all reasonable expenditures therefor should be allowed to her.

The fact that the present guardian kept no accounts is excused by the evident impracticability of exactly distributing among the several members of her family the current expenses of the household. If she were seeking to charge the ward with specific payments made on her behalf, an itemized account might properly be insisted on, but the charge being in its nature one of estimation merely, it is enough if the court can see that the estimate is within just bounds. This is plain. The charge for maintenance during the ward's minority should be allowed.

The cost of maintenance after majority was disallowed by the ordinary on the ground that the orphans court had no jurisdiction over matters occurring between the parties after the ward became of age. He agreed with the orphans court, in believing that an understanding existed between the mother and daughter

that the daughter's money in her mother's hands was to be used in supporting the family including the daughter, and that the money was so used, but he decided that the account must close at the termination of the guardianship, and the balance be ascertained and decreed as of that date.

We do not concur in this view of the law.

The orphans court is a court of general jurisdiction over the subjects committed to its cognizance. *Den.* v. *Hammel, 3 Harr. 73.* It partakes of the powers of a chancery and prerogative jurisdiction, being instituted to remedy and supply the defects in the powers of the prerogative court with regard to the accountability of executors, administrators and guardians, and such construction should be given to the statutes establishing and regulating its authority as, consistently with the obvious intentions of the legislature, will advance and extend their remedial provisions. *Wood* v. *Tallman, Coxe 153; Seaman* v. *Duryea, 11 N. Y. 324.* Our present statute (*Rev. p. 753 § 2*) invests the orphans court with full power and authority to hear and determine all controversies respecting the allowance of the accounts of executors, administrators, guardians and trustees under wills, and authorizes it to issue process to compel such persons to account for the estates in their hands. The court may also (section 160) compel obedience to its process, orders and sentences, by imprisonment or distress, and (section 161) its decrees or orders, whereby a sum of money is ordered to be paid by one party to another, being properly recorded, have the same liens and priority as judgments of the circuit court, and like executions may issue thereon.

This language, we think, imports that the orphans court may require executors, administrators, guardians and trustees under wills, to render accounts of the estates committed to them, and may ascertain the condition of the estate in their hands upon such accounting, as fully as can the court of chancery. In the latter court, it was decided by Vice-Chancellor Sir John Leach, and, on appeal, by Lord Eldon, that, where a guardian, after his ward attains full age, and before the accounts of his receipts and payments during the minority are settled, continues to manage

the property at the request of the ward, it is, in effect, a continuance of the guardianship as to the property, and he must account on the same principle as if they were transactions during the minority. In such circumstances, equity will enjoin the guardian from proceeding at law to recover a balance claimed to be due him on the transactions after his ward became of age, and will require him to state and settle the whole account in a tribunal having jurisdiction of the guardianship. *Mellish* v. *Mellish, 1 Sim. & S. 138.* According to this doctrine, the accountability of a guardian for his ward's estate remains the same after the ward's majority as before, until he has transferred the estate to the ward, or until the parties themselves have agreed to place the guardian's responsibility on a different footing. The jurisdiction of the orphans court embraces this entire accountability. It would be a narrow, not a liberal, construction of the statutory terms which authorize this court to compel guardians "to account for the estates in their hands," to say that it can compel such an account only up to the time when the ward becomes of age, and that guardians must "account for the estates in their hands," so far as their subsequent dealings with such estates are concerned, in some other tribunal.

Another consideration leads to the same conclusion. In *Seaman* v. *Duryea, 11 N. Y. 324,* the New York court of appeals, speaking of the jurisdiction of surrogates' courts, which had been granted by terms similar to those employed in our Orphans Court acts, said: "It was the intent of the legislature, in conferring this jurisdiction upon surrogates, to provide an inexpensive and summary process for the settlement and adjustment of the accounts of guardians, and to supersede the necessity of a resort to the court of chancery for that purpose. In other words, for all the purposes of settling accounts between guardians and wards, and finally adjudicating thereon, the surrogate's court was invested with all the jurisdiction which had before been exercised by the court of chancery, to be exercised, however, in the cases and in the manner prescribed by statute; and while surrogates' courts can only exercise the jurisdiction expressly conferred upon them, the statutes, being remedial and for

19

the advancement of justice, should receive a favorable construction, and such as will give to them the force and efficiency intended by the legislature. If the powers of the surrogate should be restricted to requiring the guardian to render an account of his doings, which may in a limited sense be held to be an accounting, or if it should be held that the surrogate is invested with power to examine the account rendered, allow and disallow items, and finally adjust and settle the same, and strike a balance, without power to decree the payment of such balance, the remedy will come far short of that afforded by the court of chancery, and the legislature will have failed to provide the substitute they designed. The parties pursuing will be compelled to resort to another court by an independent action to obtain the relief which before would have been had in one action. The accounting to which a guardian may be subjected, by proceedings before the surrogate, is not only a statement of his receipts and disbursements, with the amount of the trust fund still remaining in his hands, but it is, in addition to such account stated, a rendering and giving up to the party entitled of the moneys and property in respect to which the accounting party is liable. The payment is a part of the accounting. * * * The surrogate has authority to compel the guardian to account, which includes the payment of any sum which may be found in his hands, and necessarily implies power to make the necessary order or decree in the premises."

The good sense of these remarks is conspicuous, and they are as true in regard to our orphans court with its present powers as to the surrogate's court in New York. A more restricted opinion of the jurisdiction of the orphans court was expressed in *Shepherd* v. *Newkirk, Spen. 343; S. C., 1 Zab. 302;* but that was predicated upon a lack of statutory authority to render effective judgments and to enforce decrees, which has been since amply supplied. Under the existing statutes the court is sufficiently equipped to make and execute whatever decrees justice may dictate.

Considering, then, that the orphans court may require the guardian to pay to the ward the balance found upon the accounting, it would seem that such balance must cover all the dealings

Pyatt v. Pyatt.

of the guardian with the estate up to the time of the accounting, as well after as before the ward's majority; otherwise the guardian might be compelled to pay again what the ward had already received.

We, therefore, are of opinion, in the present case, that the guardian was entitled to show before the orphans court that what remained of the ward's estate, when she came of age, had subsequently been expended by the guardian for the ward's maintenance, with her consent. Such expenditure was tantamount to payment directly to the ward. So far, then, the decree ·of the ordinary, concerning the allowance claimed for maintenance after the ward became of age, is erroneous, and the decree of the orphans court is right.

But the orphans court entertained jurisdiction of the charges made by the mother against her daughter for the latter's support after her majority, beyond the estate in the mother's hand as guardian. This, we think, was without authority.

When the daughter had reached full age, the mother, as guardian, certainly did not owe her the duty of support, and the obligations of the guardianship could relate only to the property remaining in the guardian's hands. On accounting fully for that property,·the guardian's duties as such, and the rights of the ward against her, were at an end. So, also, was the jurisdiction of the orphans court, which could take lawful cognizance of those rights and duties only.

· ' Our conclusion, therefore, is, that the decree of the ordinary, so far as it disallows the appellant's charge for board and maintenance during the minority of the respondent, and after her majority up to a period when it will exhaust the funds in the hands of the guardian, should be reversed; in other respects, it is affirmed.

*For affirmance*—None.

. *For reversal*—DIXON, GARRISON, KNAPP, MAGIE, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR, SMITH WHITAKER—11.