## FRANK MARSH

*v.*

## VALENTINE MARSH'S EXECUTORS et al.

[Decided August 1st, 1907.]

1. The general charges of a trustee against the whole income of a testamentary trust estate cannot, at the option of a party interested, be appropriated to one class of income rather than another.

2. A general payment to a beneficiary under a testamentary trust on account of income derived from the trust estate cannot be appropriated exclusively to one source of income rather than another, nor can the payment be apportioned between the real and personal property on the basis of a gross income of either class, but the payment must be taken to have been made on account of net income only.

3. A testator, domiciled in New York, owned real estate in New York and in New Jersey. His will was proved and letters testamentary taken out by executors in New York. The property in the hands of the trustees was personalty.—*Held,* that the courts of New York had *prima facie* jurisdiction of the accounts of the testamentary trustees, though part of their receipts were from rents of lands in New Jersey, and a suit for an accounting in New Jersey would be stayed pending an accounting in the courts of New York.

---

On accounting in partition suit.

*Mr. Thomas P. Fay.* and *Mr. Maddox,* for the complainant.

*Mr. Joseph N. Tuttle, Mr. George Biller* and *Mr. Gulick,* for the defendants.

EMERY, V. C.

On going over and considering the entire record in this suit, including the accounts and exceptions, my present view is that no account can be equitably taken between the parties without taking in the entire accounts of Frank Marsh, as trustee, previous to May 1st, 1904. This will include his accounts for the income of the other real or personal estate, as well as the rents of the real estate in New Jersey, which has been partitioned and sold in this suit. In the matter of the accounting, the case is one of some complication, and the status on the whole record is as follows:

The testator, Theodore W. Marsh, domiciled in New York, died seized of lands in New Jersey as well as in New York, and also possessed of a large personal estate. His two sons, Valentine Marsh, a resident of New York, and Frank Marsh, a resident of New Jersey, were appointed executors and trustees of his will. The will was proved and letters testamentary taken out by both executors in New York. The testator devised his residuary estate, real and personal, and wherever situate, "to his executors, the survivor and successor of them, *in trust,* for the uses and purposes declared in the will," and by the fifth section of his will (the portion material for present purposes) the testator directed his executors to divide the residue of his estate, real and personal, after deducting certain sums set apart for testator's sister and daughters (which has been done)

"into two portions or shares equal in all respects as to value, and that the net annual income of one of said shares should be paid in semi-annual payments to each of my sons, Valentine Marsh and Frank Marsh, during his natural life, and upon the event of the death of either of my said sons leaving lawful issue him surviving, I direct that the portion previously held in trust for the benefit of such deceased son shall be divided equally among his issue, share and share alike * * *."

On or after the settlement in New York of their accounts as executors, the two executors actually divided a considerable portion of the personal estate amounting to nearly $120,000 and

set apart equal sums to the two trusts, called the Frank Marsh and Valentine Marsh trusts. The real estate was not divided, and some personal estate also seems not to have been actually divided. From the time of the testator's death, in 1894, up to the death of Valentine Marsh, October 1st, 1902, this undivided real estate and personal property was managed as a single property and estate, and Valentine Marsh had the actual financial management as active trustee. For this he was allowed $600 a year; two-fifths each being charged against Frank Marsh and Valentine Marsh and one-fifth against a sister entitled to a share of the income. Investments of money belonging to the trust estate were made on lands in New Jersey, the mortgages being made to the two trustees. One of these mortgages, for $7,500, on lands in Asbury Park, was afterwards foreclosed, and on foreclosure sale was bought in by the executors for the benefit of the estate. After the death of Valentine Marsh, October 1st, 1902, the complainant, Frank Marsh, took active charge of the estate as trustee, and by arrangement between himself and Minnie Marsh, the daughter of Valentine, a payment of $200, monthly, was made to her on account of income. This agreement with the daughter was made while she was acting under the advice of counsel, and was a temporary arrangement made necessary by the confused state of Valentine Marsh's account and the probable existence of a deficiency in his accounts. But there can be no question, I think, that by the understanding of all parties, the monthly payment was an allowance on general account out of all sources of income, and was not understood at the time to be specially chargeable as against either the income of real or of personal estate. These payments on account continued up to December, 1903, the total amounts aggregating $2,800. About that time Minnie Marsh, under the advice of counsel, demanded payment of half the rents to herself, and in February, 1904, the surviving executor filed a bill for partition of the real estate in New Jersey. This bill and supplemental bills and a cross-bill, filed by Minnie Marsh, brought in for division all the lands in New Jersey belonging to the trust estate, including the lands bought in on foreclosure by the trustees, on investments of personal estate made after the testator's death, and also some lands

held in the name of Valentine Marsh, but belonging to the testator. All of the lands held in trust in New Jersey have been partitioned in these suits by decree dated March, 1905, except the lands which were bought in on foreclosure. These lands were, under the decree, sold at public sale and the proceeds, being $6,408.39 from the sale of the Asbury Park lands, have been paid into court.

On or about May 17th, 1904, and after filing the bills for partition, the complainant, surviving trustee, filed in the surrogate's court of Westchester county, his accounts as trustee for the Valentine Marsh trust, from October 1st, 1902, to May 1st, 1904, and included the income from real estate as well as personal property in a general account, and prayed allowance, generally, for the payments of $2,800 and also for certain other payments and expenses claimed to be chargeable, generally, against the income. Whether this was a voluntary accounting or was made on proceedings requiring him to account, does not clearly appear from the records before me. On May 17th a copy of this account was served on Minnie Marsh, or her attorney in the proceedings, and she subsequently filed exceptions to the account, thus becoming a party to the proceedings. These proceedings for account in the place of domicile and probate are still pending. In June, 1904, Minnie Marsh, as defendant in the partition suits, which had been consolidated on her application on May 29th, 1904, filed a cross-bill for partition of the lands and a general account by the complainant of personal estate as well as of the rents of the lands sought to be partitioned. An application for the appointment of a receiver was subsequently made and denied, but the complainant was directed to file in this court accounts of the rents of the New Jersey real estate. These accounts, up to January 27th, 1905, have been filed; and up to May 1st, 1904, are the same as the accounts filed in the surrogate's court of Westchester county; except that the items from rents of real estate and from other sources have been separated in the present accounts. The gross amount received, according to the accounts, is $9,521.69, of which $5,829.14 is from rents of real estate and $3,692.55 from other sources. The gross payments, for which allowance is claimed, is $8,654.30, and of this total amount, the

sum of $8,156.73 is deducted from the rents, and $497.57 as made from other income. The payments from rents include the $2,800 paid on account of income and also certain items of expense which in the account before the surrogate in 1904, were charged, generally, against income, but are here for the first time appropriated to the rent account by the trustee. These items were all charged before May 1st, 1904, and were all excepted to by the defendant, Minnie Marsh, on the proceedings before the surrogate. They include payments to

| | |
|---|---:|
| William S. Marsh, for services as clerk and bookkeeper | $415.00 |
| Rent and office expenses | 257.59 |
| Commissions to agents | 284.17 |
| Repairs to real estate | 1,179.47 |
| Counsel fees | 250.00 |
| Office furniture | 89.80 |
| Total | $2,476.03 |

Except the repairs to the real estate and the commissions to agents, the charges, if proper, are general charges against the whole income, personal as well as real, and the payments or allowances therefor cannot, I think, on the mere option of either party, be appropriated to one class of income rather than another. Neither can the general payments of $2,800 to the beneficiary on account of the income be now so appropriated exclusively to one source of income rather than to another. Nor can this payment of income be apportioned between the real and personal property on the basis of the gross income of either class, because this payment must be taken to have been made and received on account of net income only.

From the time of Valentine Marsh's death, up to December, 1903, the management of the trust real estate and undivided personal property, as an undivided property which had been going on since testator's death, was continued by the consent of the parties interested, and if the case is to be controlled by New Jersey law, the surviving trustee was in no default for not making or attempting to make, of his own motion and without any request from Minnie Marsh, an immediate partition of the New

Jersey lands between himself and Minnie Marsh. It is clear that a satisfactory partition could only be made by judicial proceedings for that purpose, and these were instituted by the trustee in February, 1904, shortly after the demand of Minnie Marsh for her share of the rents. All the lands which came to the trustees under the will as testator's real estate have been divided, and the fund now in court represents only personal estate of the testator invested by the trustees after testator's death. In my judgment, it still retains its character as personal estate, so far as concerns the accounting therefor by the trustee. *Prima facie,* the courts of the testator's domicile and of the probate have primary jurisdiction of the accounts of the trustees, and their allowance, and the fact that the trustees' receipts are to some extent from the rents of lands in other states, does not, I think, affect the right of the court of domicile and probate to pass on all the items of the trustees' account, both as to charge and discharge, according to the laws of this forum. This results from the fact that the trustees derive title through the probate of the will and the receipt of letters testamentary from the New York court, and that court has therefore jurisdiction for the settlement of the trustees' accounts, wherever they may reside. *1 Perry Trusts* § 71; *Chase* v. *Chase, 2 Allen 101.* In *Davis* v. *Davis, 57 N. J. Eq. (12 Dick.) 252 (1898),* Vice-Chancellor Grey said that active trusts are usually to be enforced in the state of the domicile of the decedent. Complainant having gone to those courts, has submitted himself to their jurisdiction for the purpose of settling the amount due to the *cestuis que trust* up to May 1st, 1904, and Minnie Marsh, the defendant, being a party to the proceedings for an accounting there, this court may certainly include all income and expenditures up to the time of its filing. And in these proceedings all questions arising on the accounting can be settled more satisfactorily than on an accounting here, because the law of the domicile is probably the law to be applied on the settlement of the disputed items. The proceedings on this application by the defendant to account separately for the rents received prior to May 1st, 1904, should, as it now seems to me, be stayed pending the settlement of the account in the New York court. Such stay of the proceedings in this court for

accounting is a matter for the sound discretion of this court (*Rosenbaum* v. *Garrett, 57 N. J. Eq. (12 Dick.) 186, 189 (Vice-Chancellor Reed, 1898)*), and is an instance of the exercise of the general power of the court of a state in which a second suit is brought to stay proceedings pending a prior suit pending in another court. *Fairchild* v. *Fairchild, 53 N. J. Eq. (8 Dick.) 678, 682 (Court of Errors and Appeals, 1895)*; *Gay* v. *Mooney, Administrator, 67 N. J. Law (38 Vr.) 27 (Supreme Court, 1901)*. The jurisdiction in New Jersey, so far as relates to the accounting for rents prior to May 1st, 1904, or the filing of the cross-bill, is ancillary, I think, to the primary jurisdiction of the court of domicile and probate, and ordinarily should be exercised only for the purpose of preserving the rights of the parties pending settlement in the place of primary jurisdiction. If all the parties interested in the rents consent to a general accounting in this case, and all the parties who would, in the courts of primary jurisdiction, be bound by such accounting, are parties in the cause, or become parties to the accounting, then the general account of personal and real estate might be taken as involved in the ultimate disposition of the fund paid into court. This fund, as it now strikes me, is still personal estate for the purposes of the trustee's accounting. But the necessary parties to such final accounting in relation to the personal estate are not parties to this suit, and, as I understand, decline to become parties. These are the three executors of Valentine Marsh, who are or may be entitled to claim an accounting of the rents of the real estate which were due to Valentine Marsh, as one of the life tenants, as his share of the rents before October 1st, 1902, but were not received by Frank Marsh until after that date. Valentine Marsh appears to have overdrawn the income to which he was entitled in excess of $5,000, and to have taken, also, $18,000 or more of the principal of the estate. It is important, therefore, if these receipts of rent due to Valentine subsequent to October, 1902, are to be considered, that it should be on an accounting by which all the parties interested would be bound. The executors of Valentine Marsh reside in the State of New York, where he was domiciled at his death, and where his will was probated. Whether the executors are, in that capacity, parties to or bound by the

proceedings for accounting in New York, does not appear. The accounting previous to May 1st, 1904, as it now strikes me, must proceed to final determination in the courts of the State of New York, where the proceedings were commenced, and the funds in this court, to the extent at least of the one-half which Minnie Marsh claims, must be retained to await the result of that accounting. If, however, the defendant, Minnie Marsh, desires to apply for a general accounting in this court, both of the real and personal estate, and complainant desires to abandon the proceedings already begun in New York, I will consider the application before advising decree. The complainant should, in the meantime, continue his accounts as trustee of the rents of the New York real estate from January 27th, 1905, up to the present time. And as the stay of the proceedings pending the New York accounting is a matter not raised by counsel on either side at the time of the argument or in the briefs, but is the result of my own examination of the whole case, I will, if counsel on either side desire, hear them further on this point before advising decree.