The appeal is from an order sustaining exceptions to the executors' accounts, refusing them allowance for depreciation of assets, commissions and counsel fee and awarding counsel fee against them personally.
The testator died February 16th, 1930. By his last will and testament, after minor pecuniary bequests and a devise, he gave the residue of his estate to his executors, his two sons and the National City Bank of New York, in trust, to set aside $75,000 in good securities, to yield $3,600 annually, to be paid lifelong to three unmarried daughters, with survivorship, and having provided the fund, to pay to another daughter and a son $5,000 each, and out of the balance pay *Page 348 
$5,000 to each of his remaining seven children and the residue equally among his twelve children.
The inventoried estate, appraised at $89,789.94, consisted of,inter alia, shares of capital stock in twenty-six corporations, among them fifty shares of Central Public Service Corporation preferred stock, appraised at $4,100. At the time of the accounting in June, 1933, their value had depreciated to $50, and the executors prayed an allowance of $4,050, which was refused because of their delinquency. We fail to find support for this ruling. The proof is that the executors at all times were on their toes to keep the estate intact. At the outset, the corporate trustee advised a sale of all stocks and the money be invested in guaranteed mortgages, because of the then recent crash and the uncertain condition of the market, and for the further reason that the holdings were in small lots, which, we surmise, it thought would be more troublesome to handle than guaranteed mortgages. The individual executors disagreed. They were concerned not only over the safety of the capital investments of the estate, for their own pecuniary interests were at stake, but as well felt a deep personal responsibility to their dependent maiden sisters to provide for them an annual income of $3,600, and Central Public Service Corporation was paying seven per cent. dividends. It was an unlisted stock. The history of the panic shows a reaction in stocks after the 1929 crash until April of the following year, and thereafter the descent was steadily, gradually downward. The Central Public Service Corporation made a good showing of ability to survive; it continued to pay dividends to and including January, 1932, and in the meantime the individual executors sought all available information concerning its affairs and were diligently watchful and confident. At the next dividend period payment was suspended, and there was no longer a market for the stock. The collapse was sudden and unforeseeable. The loss happened, not from want of care or because of disagreement between the corporate and the individual executors as to whether this stock should be sold, but through an honest difference of opinion as to the sale of all stocks. It *Page 349 
may have been wise to sell all stocks, as the corporate executor advised, but in the light of more recent experience it might have led to greater disappointment had the advice to sell and invest in mortgages of guaranty companies been put into action. The refusal of the individual executors to wipe the estate clean of all stocks (investments made by the testator, eighty per cent. of which are retained in the trust fund, with values and income perhaps surer than the investments proposed by the corporate executor), is not assailed, nor is their policy in this respect criticised, but they stand condemned as unfaithful because among the score and more of stocks saved, their judgment miscarried as to one. "The law exacts of an administrator or trustee in the performance of his duty only the utmost good faith, ordinary care and prudence, and reasonable diligence. When these are fairly exercised, he is not responsible, even though loss ensues."Smith v. Jones, 89 N.J. Eq. 502. We are not in agreement with the orphans court that the executors were culpable, nor with its stricture upon them that they gambled with the assets, nor with its observation that "this case comes squarely within the scope of In re Cross, 115 N.J. Eq. 611." The distinction is as wide as care differs from negligence. The dilemma in which the executors found themselves finds resemblance in Beam v.Paterson Safe Deposit and Trust Co., 82 N.J. Eq. 518; In re CornExchange National Bank and Trust Co., 109 N.J. Eq. 169; In rePettigrew, 115 N.J. Eq. 401; Harris v. Guarantee Trust Co.,Ibid. 602, and People's National Bank and Trust Co. v.Bichler, Ibid. 617. The exception should have been overruled.
The other exceptions were to fees paid to New York counsel for services, approximating $2,500. Executors have the right to retain and pay counsel, but they retain and pay at their peril. Title to estates of decedents is in the executors, subject to the trust, the administration of which is subject to judicial approval. Outlay for counsel fees must be vouched and justified like any other item for allowance. In re Babcock, 112 N.J. Eq. 374.
The testator was a retired Philadelphia lawyer, lived in *Page 350 
Brooklyn, but maintained his domicile at Beach Haven, Ocean county. His will was probated by the surrogate of that county. A distinguished firm of New York lawyers was retained by the executors to advise them in the administration of the estate. We make no criticism of the charges made by New York counsel, but the estate should compensate them only for services rendered the estate as distinguished from services rendered to the executors.
Prudence dictated that New Jersey counsel be employed to advise in the administration of the estate, and it finds emphasis in the fact that services of three New Jersey lawyers were enlisted from time to time to assist the retained counsel, any one of whom could have competently guided the executors. The estate was a simple one to administer, perhaps not to counsel unfamiliar with our procedure, who were obliged to study our laws and practice, and made charge for it; and who, in probating the will, had a local lawyer as an associate, upon the accounting had another to act as proctor, and in setting up the trust, almost a routine matter, co-operated with a New Jersey firm of solicitors in the filing of a bill in chancery for instructions. For these services the retained counsel naturally made charges, and local counsel have been paid by the estate, or expect to be. It is not intended to minimize the value of the services of the New York counsel. We have no question that they labored faithfully and charged measurably according to their customary prices. The criticism goes to the waste, in doubling expenses and improperly charging the estate. Ancillary letters were issued in New York; death duties to state and nation required adjustment (accountancy work), stocks were to be transferred in many states; a voluminous inventory and an elaborate account were prepared and there were consultations, letters and telephone calls galore (eleven pages of items), all time-consuming and, no doubt, painstakingly performed, for which they charged by the hour. Much, if not most of this, however, the executors should have performed. If they chose to shift their duty to willing counsel they, and not the estate, should pay the expense. And besides, the corporate *Page 351 
executor had able counsel, expert in all these lines, whose services are supposed to be extended in the administration of trusts solicited by it and which it professes to manage with superior skill and efficiency. There should be no allowances to the executors for the retained counsel until the items of their bill for services to the estate are segregated and their value established and proved to be not such as the corporate executor usually furnishes, and, upon the record being remitted, the orphans court will take the proof and make the determination.
The orphans court refused commissions to the executors and counsel fee to them upon the accounting and awarded a counsel fee against them personally in favor of the exceptant because of their supposed mismanagement of the estate, for which they had been removed from office. They were reinstated on appeal. The reinstatement eliminates much of the ground, and our view of the conduct of the executors above stated removes all other upon which the orphans court based its action. Executors' compensation for "their actual pains, trouble and risk in settling such estate" is a statutory right. Comp. Stat. p. 3859.
Unfaithfulness to duty will deprive them of that right. Frey v.Adm'rs of Frey, 17 N.J. Eq. 71; McKnight's Ex'rs v. Walsh,23 N.J. Eq. 136; affirmed, 24 N.J. Eq. 498; Blauvelt v. Ackerman,23 N.J. Eq. 495; affirmed, sub nom. Ackerman v. Blauvelt,25 N.J. Eq. 570; Wilson v. Staats, 33 N.J. Eq. 524; Dufford v.Smith, 46 N.J. Eq. 216; Brewster v. Demarest, 48 N.J. Eq. 559;Hetfield v. Debaud, 54 N.J. Eq. 371; Fluck v. Lake, Ibid.638; In re Walsh's Estate, 80 N.J. Eq. 565; Clark v. Clark,87 N.J. Eq. 504, and In re Smith, 107 N.J. Eq. 607.
Accountability of executors for improper expenditure, unaccompanied by bad faith, finds remedy in disallowance or surcharge.
The executors asked for an allowance of one per cent. each. It is fair. Counsel asked for $350 on the accounting. It is reasonable. The allowances should have been granted. The decree against the executors personally for a counsel fee to the exceptant cannot be justified. *Page 352