This is an appeal from a decree entered by the Atlantic County Orphans Court on an accounting of trustees, in which decree the accountant is surcharged the amount of certain investments made by it while acting as trustee, which investments consisted of four participations in mortgages on land situate in the State of Pennsylvania, which investments were not "legals" in New Jersey.
The decree also denied to the accountant any commissions and ordered that the accountant pay the costs of a reference to a special master, also a counsel fee to counsel for the exceptants, also the costs of the stenographic record of the accounting, and denied any fees to counsel for the accountant.
The decree below with reference to the surcharges aforesaid stands or falls on the question as to whether or not the administration of decedent's estate was properly undertaken by virtue of the laws of the State of Pennsylvania, or whether the laws of the State of New Jersey controlled. I say this notwithstanding the fact that counsel for the exceptants below *Page 578 
urged that even under the laws of Pennsylvania the surcharges should have been made, and this by reason of an alleged lack of due care and diligence on the part of the accountant in the making of the investments under the Pennsylvania laws, as well as a further charge that the accountant illegally invested in the mortgages which were the subject of the surcharge by reason of having purchased these investments from itself.
 FACTS.
Decedent, Robert A. Johnston, died testate on March 21st, 1928, a resident of Atlantic City, New Jersey, where he had been domiciled for a number of years prior to his death. The will was probated in the Atlantic County Orphans Court and the Commonwealth Trust Company of Harrisburg, Pennsylvania, was therein appointed decedent's trustee.
The will aforesaid, in the seventh paragraph thereof, gave to the Trust Company as trustee the sum of $15,000 "to securely invest, reinvest and keep invested" and to pay the income to the testator's daughter-in-law, Ellen R. Johnston, during her lifetime and upon her death to pay the income to testator's grandson, Robert Johnston, until he arrived at the age of 30 years and then to pay the principal to said Robert Johnston. At the time of testator's death Ellen R. Johnston was domiciled and a resident of Atlantic City and the grandson was domiciled and a resident of Harrisburg, Pennsylvania, where he resided until 1931, thereafter being a resident of the borough of Longport, New Jersey.
The respondents here and the exceptants below were the two Johnstons, and the Commonwealth Trust Company is the appellant.
From the foregoing short recital it appears that under the Johnston will the testator selected as his trustee a banking corporation of the State of Pennsylvania and the evidence further discloses that that corporation was not then and never has been engaged in business in the State of New Jersey, nor has it ever been authorized to do business in New Jersey.
The point made by appellant is that the testator, having appointed as his trustee a trust company of a foreign state, *Page 579 
presumptively intended that the trust should be administered in the latter state and according to the laws of said state and not the laws of New Jersey. The basis of appellant's contention is the Restatement of the Law on the Subject of Conflict of Laws,380, § 298, and particularly comment (c), which reads as follows:
"c. Foreign trust company appointed trustee. If the testator appoints as trustee a trust company of another state, presumptively his intention is that the trust should be administered in the latter state; the trust will, therefore, be administered according to the law of the latter state."
If appellant's contention as above stated is not sustained the surcharge below must stand.
Counsel for the appellant states that he does not dispute that the general rule in New Jersey is that where an individual is appointed a testamentary trustee of personalty and that individual happens to be a resident of a foreign state the law of New Jersey governs the administration of the trust estate, but he says that the rule stated in the Restatement applies when a foreign corporation is appointed as such trustee.
The presumption spoken of in the Restatement is, at most, a rule of construction, to be used in the ascertainment of the intention of the testator; it is not conclusive. See SecurityTrust Co. v. Lovett, 78 N.J. Eq. 445 (at p. 452);79 Atl. Rep. 616.
A careful reading of the will itself utterly fails to disclose any expressed intention of the testator as to the law under which his estate should be administered by his trustee, nor does it, on its face, disclose any facts upon which the court may base any inference as to his intention in that respect, and it seems to me that the evidence discloses no facts from which any inference may be gathered sustaining appellant's contention but, on the contrary, such inference as may be indulged in by the court tends to support the idea that the intention of the testator was that his estate should be administered in accordance with the laws of the State of New Jersey. The facts upon which such an inference is justified are, first, *Page 580 
that decedent was domiciled in the State of New Jersey and the testator's intention with respect to the administration of his estate must be taken in the light of the New Jersey law as it stood at the time of testator's decease, and the law of New Jersey at that time was well settled that upon the appointment of a non-resident trustee of movables, the trustee was to be controlled by and the trust estate was to be administered under the law of New Jersey. Secondly, at the time of the death of testator the Restatement had not been published nor had the rule annunciated therein been promulgated, so that testator may not be presumed to have had knowledge of that rule or of the decisions of such states as may have adopted the principle therein annunciated. Thirdly, the fact is that under the laws of New Jersey testator's personal property was not assessable for taxing purposes in New Jersey, and in Pennsylvania there was such an imposition, so that it seems unreasonable to suppose that testator would have intended to so burden his quite large personal estate.
In the State of Pennsylvania (In re Cronon,192 Atl. Rep. 397), the language used in the appointment of a trustee by a testator was very similar to the language used by our decedent and the Supreme Court of that state said:
"The facts here rebut the presumption of intention suggested in the comment." (Restatement comment (c)). "The words used in the will to express her intention must be taken in the light of the statutory requirement that the trustee account to the New York court for its administration of the trust, the testatrix not having provided otherwise. In such circumstances it is immaterial that the trust property was brought into this commonwealth, because it remained subject to distribution by the New York court. That court retained control of the trustee and of the administration of the trust; the trustee must there account for the remainder of the trust property, not consumed."
It is argued that Mr. Johnston, the decedent, had long been a resident of Harrisburg, Pennsylvania, prior to the time he removed to Atlantic City; that he was closely associated with the affairs of the Commonwealth Trust Company; that his factory was located in Harrisburg; that he held stock in the *Page 581 
Trust Company; that his son was a director of the Trust Company and that, therefore, he chose the Trust Company as his trustee, with the thought that the trust would be administered in accordance with the laws of that state.
It would seem to me that this does not follow but that, on the other hand, had he desired that the Trust Company administer the estate in accordance with the laws of Pennsylvania he would have said so.
In Lozier v. Lozier (1919), 99 Ohio St. 254;124 N.E. Rep. 167, it was said:
"When this will was made by a resident of Ohio, and offered and admitted to probate in the State of Ohio, it became an Ohio instrument, creating an Ohio trust, to be administered agreeably to Ohio law, unless the terms and provisions of the instrumentclearly indicated some specific terms or provisions clearly showing a contrary intention on the part of the testatrix. That the testamentary trustees were residents of New York is not enough to show such contrary intention. The presumption is that they were selected for personal confidence, rather than geographical location — rather than mere jurisdiction as to the administration of the trust. It is not enough that the securities have as their situs the city and State of New York. Being personal property, their domicile is ambulatory and follows their lawful custodian. Under the Ohio law the primary lawful custodian of this trust is the Probate Court of Cuyahoga County, Ohio, and the testamentary trustees mentioned in the will are simply the instruments or agents of the courts of Ohio, in the administration of the trust. The law of Ohio, having authorized the will and the probate of the will, also fixed the terms and conditions of the administration of the trust created by the will."
In Chase v. Chase (1861), 2 Allen (Mass.) 101, it was said:
"The residence of the trustee and cestui que trust out of the commonwealth does not take away the power of this court to regulate and control the proper administration of trust estates which are created by wills made by citizens of this state, and which have been proved and established in the courts of this commonwealth. The legal existence of the *Page 582 
trust takes effect and validity from the proof of the will, and the right of the trustees to receive the trust fund is derived from the decree of the probate court."
There being no dispute that the law in New Jersey is well settled that the courts of the testator's domicile and of the state in which the will was probated takes primary jurisdiction over a trust when an individual is appointed as trustee, citation of the many cases to that effect would seem to be useless.
Personal property has its situs at the domicile of the creator of the trust and is based on the doctrine of the maxim"mobilia sequuntur personam" (Swetland v. Swetland, 105 N.J. Eq. 608; 149 Atl. Rep. 50; affirmed, 107 N.J. Eq. 504;153 Atl. Rep. 907), and the only exception thereto so far recognized in this state is in the case of a charitable trust, Rosenbaum v.Garrett, 57 N.J. Eq. 186; 41 Atl. Rep. 252, in which case testator was a resident of Pennsylvania, and Vice-Chancellor Reed said (at p. 192):
"The insistence of the counsel for the complainant is that it must be concluded that the testator intended that this trust should be administered and construed in accordance with the laws of New Jersey, from the fact that he named a trustee who was at the time the will was made, as well as at the time of the testator's death, a resident of New Jersey.
"But if both trustee and a cestui que trust were domiciled in New Jersey at the dates mentioned, the result, in my judgment, is the same. Neither condition of act would fix upon the testator an intention that the trust should be construed by the law of New Jersey."
As pointed out in Marsh v. Marsh's Ex'rs, 73 N.J. Eq. 99;67 Atl. Rep. 706, the trustee derives title through the probate of the will in New Jersey, hence the courts of that state have jurisdiction for the settlement of the trustee's accounts and the laws of that state govern as to investments to be made by the trustee.
In Farnum v. Pennsylvania Company for Insurance on Lives,c., 87 N.J. Eq. 108; 99 Atl. Rep. 145; affirmed, 87 N.J. Eq. 652; 101 Atl. Rep. 1053, a resident of New Jersey died testate and bequeathed to this daughter a life *Page 583 
estate in certain personalty, with power of appointment. The trustee named was a foreign trust company and the question was whether the donee of the power had exercised it by her last will and testament, which was probated in Pennsylvania, the life tenant being a resident of Pennsylvania at the time of her death. Vice-Chancellor Backes held that the donor of the power having been a resident of New Jersey at the time of his decease and his will having been probated in that state, "The power was created and exists by virtue of the laws of this state, and it is settled law that the exercise of powers conferred by will is controlled by the law of the testator's domicile, both as to the execution of the power and the interpretation of it."
After citing numerous cases in support of the above principle, the vice-chancellor said:
"The selection of a foreign trustee and possession of the fund outside of the state, does not affect the rule, for the reason that the property belongs to the estate of a testator domiciled here, and is to be administered according to our laws under the supervision of our courts, to which the trustee is amenable."
It is true that in the above case the question was not brought up on an accounting by a foreign trustee as in the instant case, but it is not perceived that this difference would justify the court in holding that the law of this state did not govern the accountant as to the character of securities in which it was authorized to invest the trust moneys.
See, also, McCullough's Ex'rs v. McCullough, 44 N.J. Eq. 313; 14 Atl. Rep. 123; Davis v. Davis, 57 N.J. Eq. 252;41 Atl. Rep. 353; Murphy v. Morrisey Walker, Inc., 99 N.J. Eq. 238;132 Atl. Rep. 206; Hewitt v. Green, 77 N.J. Eq. 345;77 Atl. Rep. 25.
The trustee recognized the fact that it must account to the court where the will was probated and must have further conceded that such an accounting is not only a statement of receipts and disbursements with the amount of the trust estate still remaining but it is "a rendering and giving up to the party entitled of the moneys and property in respect to which the accounting party is liable. The payment is a part of the *Page 584 
accounting." Pyatt v. Pyatt, 46 N.J. Eq. 285;18 Atl. Rep. 1048.
Any question that arises after the trust has come into being is a question of administration of the trust.
"Such questions relate to the trustee's duty, the investmentshe makes, to whom he must pay income or principal, where he must account, the assignability of the interest of the beneficiary, and the power of his creditors to reach the trust res or its income, and the right of the beneficiary to terminate the trust."Restatement, § 297-2.
These questions, under the decisions of our courts in the instant case all must be determined under the New Jersey law and any intent of the testator in variance with our decisions in reference thereto must manifestly appear in the will, and the mere appointment of a foreign corporate trustee, with nothing more, does not, under our law, justify a presumption that the testator meant otherwise. In the instant case, to justify such a presumption would be to add to the testator's will something not suggested therein.
The next question that must be determined is, should the court below have refused to allow the accountant commissions and should it have charged the accountant with the cost of the reference to the master, the cost of the stenographic record and the counsel fee allowed to the exceptant.
In re Megargee, 117 N.J. Eq. 347 (at p. 351);175 Atl. Rep. 808, the court said:
"Executor's compensation for `their actual pains, trouble and risk in settling such estate' is a statutory right. * * * Unfaithfulness to duty will deprive them of that right. * * * Accountability of executors for improper expenditure, unaccompanied by bad faith, finds remedy in disallowance orsurcharge."
So in the case at bar, the trustees have labored for twelve years for which, under the decree of the court below, they would receive nothing. True, they invested in non-legals in New Jersey but did not invest in non-legals in Pennsylvania. The most that may be said is that the Trust Company misconceived the law with respect to its duty, but it did not act in bad faith in so doing, neither did it act in bad faith in *Page 585 
investing the moneys in the participation mortgages in question. It bought mortgages for investment in estates handled by it and allocated participation therein as the necessities of each estate required, and by so doing maintained an even flow of income. The trustee did not purchase mortgages indiscriminately but only after careful thought and investigation. It pursued the general practice of trust companies in respect to this class of investment. It did not deal in mortgage investments in its commercial department and charge profits against its allocation of participation to estates. It did sell some participation to the outside public but dealt with these transactions in an entirely different manner. It charged for and did guarantee the principal and interest to the outside investor but it did not charge for or guarantee principal or interest to participating estates.
The trustee finds itself surcharged with these investments and if it complies with the decree in that respect the estate loses nothing. Under these circumstances, it would be unjust to give to the exceptants the $15,000 corpus with interest at six per cent. and deprive the trustee of commissions. The decree below should be modified so that the trustee be surcharged as adjudged below, but that it be permitted to deduct from the amount of the surcharge its commissions at the statutory rate at the time of the turning over of the corpus which, as I understand it, is to be forthwith, both the life tenant and the remainderman, as well as the Trust Company, having agreed so to do.
The applicable law is stated in Babbitt v. Fidelity TrustCo., 72 N.J. Eq. 745: 66 Atl. Rep. 1076, by Vice-Chancellor Garrison:
"Where a trustee's conduct was not willfully wrong, and he has not confused accounts or unwarrantably used trust moneys, and has large resources, so that the making of unauthorized investments could not prejudice the interest of the cestui que trust, the fact that he was subject to surcharge in certain respects is insufficient to defeat his right to commissions."
Counsel, however, points to McAllister v. McAllister,120 N.J. Eq. 407; 184 Atl. Rep. 723, and In re Bender's Estate, *Page 586 122 N.J. Eq. 192; 192 Atl. Rep. 718. In the McAllister Case
the trustees were not denied commissions which they had collected from time to time during the period of the trust but, in fact, these commissions were allowed. In the Bender Case no commissions were allowed for obvious reasons, one of which was that the trustee had used the trust funds for his own profit and was financially unable to respond to the surcharge.
Of course, should the trustee fail to account for and pay over the corpus, the commissions should not and could not be allowed. Its liability may not be diminished by the commissions, which are only payable for faithful services rendered. I say this because the trustee is in process of liquidation but, as I understand it from counsel's statement in court, is solvent and amply able to respond.
As to counsel fees assessed against the trustee, as well as master's fees and stenographic costs, the decree below should be affirmed. The necessity for these expenditures arose out of the misconception of the trustee as to its duty with reference to its investments and through no fault on the part of the cestui.
With reference to master's fees, R.S. 1937, 3:10-17, is not a mandatory direction to the court that in all cases the court must order these expenses be paid either by the county or the estate. The fees of the master were properly assessed against appellant as part of the costs and expenses of the litigation undersection 196 of the Orphans Court act. See In re Loudenslager,113 N.J. Eq. 418; 167 Atl. Rep. 194.
It is argued that the exceptants are estopped from complaining as to the investments. I do not so find. All that appears is that certain statements were sent to the life tenant at various times and that after default had occurred in some of the interest installments the life tenant talked the matter over with the officers of the Trust Company. It nowhere appears that the remainderman ever discussed the matter with the trustee nor was he in duty bound so to have done. He had a right to suppose that the investments were New Jersey legals and the trustee doing its full duty to the trust fund. It is true that the remainderman discussed some of *Page 587 
the statements with his mother but nowhere does it appear that such a disclosure was made by the trustees as to estop exceptants, i.e., no such disclosure as meets the requirements to create an estoppel. See McAllister v. McAllister, supra
(at bottom of p. 413).
Decree in accordance with this opinion, with costs against appellant.