JAMES B. STAATS and ALETTA ANN, his wife, *vs.* ZACCHEUS
BERGEN and JAMES L. BERGEN.

1. A judgment rendered against a plaintiff in a strict legal proceeding,
is no bar to a suit in equity upon the same subject matter, where the com-
plainant presents equitable grounds of relief, which were not, and could
not be, considered or decided by the former tribunal.

2. A husband is not a competent witness in a cause in which his wife is
a party.

3. It is the recognized law of this state, that a trustee, in the exercise of
his duty as trustee, cannot become the purchaser of the property of his
*cestui que trust.* The rule applies, as well where the sale is made by a
sheriff or master, as by the trustee himself; and in the latter case, whether
the sale was made by the trustee, of his own authority, or under a judicial
order or decree.

4. A trustee is not relieved from his incapacity to become a purchaser
at the sale of the real estate of his *cestui que trust,* by the fact that the
*legal estate* therein is not in him.

This cause was argued before J. Wilson, esq., one of the
masters of the court, who was called by the Chancellor to
sit and advise with him. The facts of the case are fully
stated in the opinion of the master.

*Mr. Ransom,* for complainant.

*Mr. Dilts,* for Z. Bergen, one of the defendants.

Cases cited by complainants' counsel. *Page* v. *Page,* 8
*New Hamp. R.* 187; *Hill on Trustees* 92, and cases in the
notes; *Ibid.* 94, 96; *Peebles* v. *Reading,* 8 *Serg. & R.* 484;
*Runnels* v. *Jackson,* 1 *How.* (*Miss.*) 358; *Orr* v. *Pickett,* 3
*J. J. Marshall* 269; *Perry* v. *Head,* 1 *A. K. Marshall* 46;
*Chadwick* v. *Felt,* 35 *Penn. State R.* 305; *Gilmore* v. *John-
son,* 29 *Georgia* 67; *Belcher* v. *Saunders,* 34 *Ala.* 9; *Fer-
guson* v. *Williamson,* 20 *Arkansas* 272; *Wilkinson* v. *Wil-
kinson,* 1 *Head* 305; *Bryant* v. *Hendricks,* 5 *Clarke* (*Iowa*)
256; *Hall* v. *Young,* 37 *New Hamp. R.* 137; *Northcraft* v.

*Martin*, 28 *Missouri R.* 469; *Walraven* v. *Lock*, 2 *Patton & Heath* 547; *Soggins* v. *Heard*, 31 *Miss.* 426; *Bruce* v. *Roney*, 18 *Illinois* 137; *Neill* v. *Keese*, 13 *Texas* 137; *Hill on Trustees* 368, and note; *Cumberland Coal & Iron Co.* v. *Sherman*, 30 *Barb.* 553, 567; *Michoud* v. *Girod*, 4 *Howard* 503, 555–9.

THE MASTER. In the year 1840, Abraham I. Staats, father of the complainant, James B. Staats, died intestate, leaving, surviving him, his widow, Mary Staats, and three sons, to wit, the said James B. Staats, and John A., and Evert B. Staats. By agreement between said widow and heirs-at-law, they placed one thousand dollars in the hands of her brother, Zaccheus Bergen, the defendant, as trustee, the interest of which was to be paid to her during her life, in lieu of dower, and after her decease, the principal was to be paid equally to her said three sons. Mr. Bergen thereupon executed a declaration of trust in writing, under seal, dated 3d May, 1845, which is as follows, to wit: "Whereas, I, Zaccheus Bergen, of the county of Somerset, and state of New Jersey, have this day received of George H. Brown, attorney of Mary Staats, widow, and John A. Staats, James B. Staats, and Evert B. Staats, heirs-at-law of Abraham I. Staats, deceased, of the same place, the sum of one thousand dollars, of which the said widow is to receive the interest during her life, in lieu of her dower in the real estate of her late husband, by agreement between her and the said heirs-at-law. Now, therefore, know all men by these presents, that I, the said Zaccheus Bergen, have received the said sum of money, as trustee of the said widow and heirs-at-law, and I do hereby agree to place and keep the same at interest, upon good security, during the natural life of the said widow, and to pay her the interest arising from the said sum, annually, so long as she may live. And I do further agree to and with the said heirs-at-law, to pay over, within one year after the death of the said widow, the said sum of one thousand dollars, with the interest that may have accrued thereon

after her death, to the said John A. Staats, James B. Staats, and Evert B. Staats, their heirs or assigns."

Annexed to said instrument is a written confirmation thereof, of the same date, signed by the said heirs, which is as follows: "The above trust is pursuant to agreement between us and the said Mary Staats, widow, as above said, and we do ratify and confirm the same."

Afterwards, and about May 1st, 1846, Mr. Bergen, the trustee, lent to said James B. Staats the sum of $333.33, one-third of said trust money, being the portion thereof which, on the decease of said widow, would be due to him. To secure this loan, the said James B. Staats executed to Mr. Bergen a mortgage upon his farm of about ninety-two acres, in Somerset county, and upon which there was then existing a prior mortgage for $1100, given to P. P. Quick, to secure certain trust moneys, which he held for said Alletta Ann Staats, and which he had lent to said James B. Staats, her husband.

In a foreclosure suit, afterwards brought in this court by a Mr. Van Nest, upon a mortgage subsequently given on said farm, and in which suit Mr. Bergen and others holding mortgages thereon, were defendants, a decree for the fore-closure and sale of the mortgaged premises was made, and under an execution issued thereon, the sheriff, in March, 1859, sold the farm to John A. Staats for $3910, and con-veyed it to him. This sum so raised by the sale, was more than enough to pay the amount due to Mr. Bergen, on the said mortgage held by him as trustee, after paying the prior mortgage, and the costs and expenses of sale.

The purchaser, John A. Staats, executed four mortgages on the farm as follows, to wit: one to Wm. S. Cook, for $1200; one to said Z. Bergen, for $333.33; one to P. P. Quick, for $1000; and one to J. M. Mann, for $800. The first three were dated 4th April, 1859; the other was dated one day later. And these four mortgages were so recorded, that in regard to their priority as liens, they stood in the order in which they are here mentioned. The mortgages to

Quick and Mann were given to secure moneys, which they respectively held in trust for said Aletta Ann Staats. The mortgage so given by John A. Staats to Zaccheus Bergen, does not, on its face, show that it was given to him, as trustee, to secure one-third of the trust moneys so placed in his hands. But, in his answer, Mr. Bergen admits that it was. He appears simply to have continued the investment of that portion of the trust moneys, by taking a new mortgage for it upon the same farm, from the purchaser at the sheriff's sale.

On the 31st of October, 1861, Mr. Bergen, still holding said last mentioned mortgage, executed in writing, under his hand and seal, a second declaration of trust, which is as follows, to wit: "This writing witnesseth that I, Zaccheus Bergen, of the township of Hillsborough, and county of Somerset, hold a bond and mortgage given by John A. Staats and his wife on a farm in Bridgewater township, in said county, to secure the sum of $333.33, with interest thereon, as trustee, to be appropriated by me to the support of Mary Staats, as far as it may be necessary, during her natural life, and to the payment of her funeral expenses; and within one year after her decease, I promise, and bind myself, my heirs, executors, and administrators, to pay the residue that may remain in my hands, to James B. Staats, of Newark, in the county of Essex, his heirs or assigns."

The James B. Staats here mentioned, is the same who was mentioned in the first declaration of trust. On the ninth of February, 1861, by writing, under his hand and seal, he assigned all his interest in said bond and mortgage and the moneys secured thereby, to his son Abraham I. Staats, who, in his testimony in this case, states that it was so assigned to him in trust for his mother, the said Aletta Ann Staats, though it is not so expressed in the instrument itself. On 10th September, 1863, and before the commencement of this suit, he assigned directly to her all his interest in said bond and mortgage and the moneys thereby secured.

On the thirty-first of May, 1860, J. M. Mann filed in this court, a bill to foreclose the mortgage for $800, upon said

farm, executed to him as trustee of Mrs. Staats, as before mentioned, making Zaccheus Bergen and the other persons holding mortgages thereon, defendants in said suit. A decree was made for the sale of said farm, to raise and pay the moneys due on said four mortgages given by John A. Staats, in the following order, and to the following amounts, to wit, 1st, Wm. S. Cook, $1363.06; 2d, Zaccheus Bergen, $372.82; 3d, P. P. Quick, $1203.34; 4th, J. M. Mann, trustee &c., $969.39; with interest on said sums from 28th March, 1861. Under execution issued on this decree, the said farm was exposed to sale by the sheriff, on the twenty-seventh of May, 1861, and was struck off to said Zaccheus Bergen for $1850, he being the highest bidder therefor, and the sheriff executed to him a deed for the property.

After the sale, Aletta Ann Staats requested Mr. Bergen to convey the farm to her, because, as she alleged, he had agreed to buy it for her at the sheriff's sale, and also because at such sale he was acting as trustee, and she was entitled to the moneys secured by the mortgage so held by him in trust, and to satisfy which, with other encumbrances, the farm was so sold; she offering, if Mr. Bergen would convey it to her, to re-pay him what he had paid for it, and something in addition for his trouble. Mr. Bergen at first seemed disposed to accede to her request, but finally refused, and claimed to hold the farm as his own. Afterwards he conveyed an undivided half of the farm to his son James L. Bergen, one of the defendants in this case. The bill charges that James took that conveyance with full knowledge of all the facts of the case, and of the equitable right and claim of Mrs. Staats to have the farm conveyed to her. He has failed to answer the bill, and it has, by order of the court, been taken as confessed against him.

The prayer of the bill is, that the defendants may be decreed to convey the farm to said Aletta Ann Staats, upon her paying to Zaccheus Bergen the amount he had paid for it, or else that he may be compelled to pay her the said $333.33, with interest.

The answer of Zaccheus Bergen admits the execution of the above mentioned declarations of trust, the execution of said mortgages to him for part of the trust moneys, and his purchase of the farm at said sheriff's sale for $1850, and insists that he had a right to buy it for his own use. It also states that an action of debt was brought in the Supreme Court of this state by Abraham I. Staats, against said Zaccheus Bergen, by process, returnable 24th March, 1862, upon said second declaration of trust, (which was before Abraham had assigned the same to his mother,) and that in said suit, upon a demurrer filed by the plaintiff to one of the pleas of the defendant, judgment was given for the defendant at the Term of November, 1862, and that said judgment still stands in full force, and the plaintiff therein has paid the defendant's taxed costs, and abandoned the suit. And that, therefore, he cannot be further called upon in this suit, to answer upon said matters. A copy of the record in that suit in the Supreme Court, is in evidence here.

The answer also denies that Mr. Bergen agreed to buy the farm for Mrs. Staats at the sheriff's sale, as charged in the bill. It also insists that under and by virtue of the said second declaration of trust, Mr. Bergen was trustee only for the widow, Mary Staats, of the bond and mortgage therein mentioned, and that his trust ended at her decease, and that he was not, under the same, trustee for said James B. Staats, or his assigns, but was only bound to pay over such residue of the moneys secured by said bond and mortgage as he might receive thereon, as might remain in his hands unexpended for the support of said widow, or for her funeral expenses, and that no such residue of said moneys remain in his hands to be paid over, and that he has in all things performed his duties under said instrument.

The judgment in the suit in the Supreme Court, mentioned in the answer, is not, in my opinion, a bar to the present proceeding. That was an action of debt, brought upon the second declaration of trust, which was declared on as a bond. That suit was a strict legal proceeding, and the

·equitable grounds of relief now presented to this court, on the part of the complainants, were not brought into view, and were not and could not, in that suit, be considered or decided upon in that court. They are now before this court, and should be considered and decided here.

James B. Staats, one of the complainants, was examined as a witness in this case, on the part of the complainants, but was objected to as an incompetent witness at the time, and before his examination was commenced. This objection was well taken, and his testimony cannot be received. He is not a competent witness in a cause in which his wife is a party. This point was settled in this court, in *Bird* v. *Davis*, 1 *McCarter* 467.

The allegation in the bill, that Mr. Bergen agreed to buy the farm at the sheriff's sale for Mrs. Staats, is denied by the answer, and is not sustained by the evidence.

The declaration of trust, executed by Mr. Bergen on the third of May, 1845, shows clearly that the $1000 then placed in his hands, was held by him as trustee for the widow, Mary Staats, and her three sons, of whom the complainant, James B. Staats, is one, and that Mr. Bergen was to keep the same at interest upon good security during her life, and pay the interest to her, and after her decease, was to pay the principal to her said sons, their heirs or assigns. One-third of that principal sum he lent to said James B. Staats, and the mortgage executed by him to Mr. Bergen as security therefor, was held by him as such trustee.

When the farm was sold, under the foreclosure of Van Nest, in March, 1859, at the sheriff's sale first above mentioned, it brought enough to pay the amount due on the mortgage so held by Mr. Bergen, after satisfying all prior claims, and the costs and expenses of sale. Mr. Bergen then received, or was entitled to receive, as trustee, that amount, and it was his duty as such trustee, to invest the principal sum of $333.33 for the benefit of the *cestuis que trust*, to wit, the widow and her said three sons. He did so invest it, by taking a mortgage for that amount on the same farm,

from John A. Staats, who bought it at that sale. That mortgage, as already stated, was dated the fourth of April, 1859.

It was Mr. Bergen's duty, as trustee under the declaration of trust just mentioned, to take care of that investment and collect the moneys secured thereby, and apply them in pursuance of the trust. That mortgage always afterwards remained in his hands. On the 31st of October, 1860, he executed the second declaration of trust. I consider that under this instrument, Mr. Bergen became trustee of said mortgage and of the moneys thereby secured for the purposes therein mentioned, and that, as such trustee, it was his duty to guard and take care of that investment, and apply those moneys to the purposes of the trust, that is, for the support of the widow during her life, and, if necessary, for her funeral expenses after decease, and then, within one year, to pay the residue to said James B. Staats, his heirs or assigns.

The widow, Mary Staats, died on February 14th, 1861. I do not think that the position taken by the defendant's counsel, that the trust of Mr. Bergen, under this second declaration, ended at the decease of the widow, is correct. I am of opinion that the trust, and the obligations which as trustee he had assumed, still continued, and that as such trustee, he had duties still to perform towards James B. Staats, or his assigns, to whom as *cestui que trust*, the residue of said moneys, not expended for the widow, was due after her decease. The right of James B. Staats passed by assignment, first to Abraham I. Staats, in trust for Aletta Ann Staats, and then directly to said Aletta Ann Staats, herself. The duties of Mr. Bergen, as trustee, were not thereby in any wise altered or affected, except as to the person towards whom they were to be performed.

I do not understand Mr. Bergen as claiming that anything is to be deducted from the principal sum secured by that mortgage, on account of any money paid for the support of the widow, or for her funeral expenses. He says, in his tes-

timony, that he spent about $200 " at the time of the funeral, and it has been paid in such a way, that no part of it is chargeable to the claim of the complainant." He claims, however, that the mortgaged premises did not sell for enough to pay that mortgage, after satisfying prior encumbrances, and that no part of the moneys secured by it, came to or remained in his hands after the widow's death, and that he is, therefore, not responsible for the said moneys, or any part thereof.

When the mortgaged premises were sold by the sheriff, on the twenty-seventh of May, 1861, Mr. Bergen was still trustee as aforesaid, under the second declaration of trust, and as such, held the said mortgage to secure the said $333.33, trust moneys. He was, as the holder of that mortgage, one of the defendants in that suit, and the sale was to raise money to pay that mortgage, as well as other encumbrances. He bid for the farm at that sale, and became the purchaser, and now claims to be entitled to hold it as his own. Is he entitled to do so?

The farm did not sell for enough to satisfy the first two mortgages. Mr. Bergen says, in his testimony, that the residue of the sum which he bid for the property, remaining after satisfying Cook's mortgage, which was the first encumbrance, was $294, or $297; and that he paid it over to Quick, whose mortgage he believed to be the second lien. The evidence shows that Mr. Bergen was mistaken in this. The mortgage held by Mr. Bergen, as trustee, was the second lien. It is so stated in the decree and execution under which the sale took place, and Mr. Bergen, as before stated, was a party to that suit, as well as purchaser at the sale. The residue should have been applied to that mortgage held by him, and not to Quick's mortgage. But if so applied, it would not have satisfied it, and the mortgages held by Quick and Mann, both of which were given to secure moneys held by them in trust for Mrs. Staats, would have remained wholly unpaid. So that, in either case, whether that residue

2 c*

were applied to the mortgage held by Mr. Bergen, or to that held by Quick, Mrs. Staats would be a loser to a large amount.

The complainants insist, that at the time of the sheriff's sale.to Mr. Bergen, the farm was worth $4000 and upwards, and would have brought that sum at a fair and open sale, and that persons who might otherwise have bid, may reasonably be supposed to have been prevented from doing so by seeing that Mr. Bergen was bidding, whom they knew to be trustee, and might suppose to be acting for the benefit of his *cestui que trust*. This is denied by the defendant, who says that the farm was not worth more than $100 to $150 above what he bid for it, and that the sale was a fair and open one.

I do not think it necessary to examine and weigh the evidence in regard to the value of the farm. The case must, I think, be decided on other grounds. The doctrines and principles which apply to, and regulate the respective rights and duties of trustee and *cestui que trust*, must, in my opinion, govern this case.

The farm which Mr. Bergen bought at the sheriff's sale, was property upon which he, at the time, held a mortgage, which he had taken as security for moneys held as trustee.

The sale was by virtue of a decree and execution in a foreclosure suit, brought by the holder of another mortgage on the same farm, in which suit Mr. Bergen was a defendant, and the sale was to raise and pay the moneys due on the mortgages upon the property, one of which was the said⌐ mortgage held by Mr. Bergen, as trustee.

In 4 *Kent's Com.* (*3d ed.*) 438, it is said, that " it is a general rule, applicable to sales, that when a trustee, or any person acting as agent for others, sells a trust estate, and becomes himself interested, either directly or indirectly, in the purchase, the *cestui que trust* is entitled, as of course, in his election, to acquiesce in the sale, or to have the property. reexposed to sale, under the direction of the court, and to be put up at the price bid by the trustee; and it makes no difference, in the application of the rule, that the sale was at

public auction, *bona fide*, or for a fair price. The rule is founded on the danger of imposition, and the presumption of the existence of fraud, inaccessible to the eye of the court. The policy is to shut the door against temptation, and which, in the cases in which such relationship exists, is deemed to be of itself sufficient to create the disqualification."

The same doctrine is laid down in 3 *Sug. on Ven. & Pur.* 226; 1 *Story's Eq. Jur.*, § 322; *Michoud* v. *Girod*, 4 *Howard S. C. R.* 503; *Davoue* v. *Fanning*, 2 *Johns. Ch. R.* 252; in which last case, Chancellor Kent reviews, at length, the English decisions, and approves and sustains them.

And the rule, as there recognized by Kent, has been adopted in its broadest extent in this state, in *Scott* v. *Gamble*, 1 *Stockt.* 218, 237. The rule is also held to be applicable, whether the sale was made by a trustee, of her own authority, or under a judicial order or decree. See above cases, and also *Conway et al.* v. *Green's adm'r*, 1 *Harris & Johns.* 151.

But it may be said that where a sale (as in the present case,) was not made by the trustee himself, but by a sheriff, or master, or other officer, under a judgment, decree, or execution, the rule does not apply, and that the trustee may, in such case, purchase and hold the property for his own benefit. But it is held that the rule applies to such sales, as well as to those made by the trustee himself, as will be seen by the following cases. *The York Building Co.* v. *Mackenzie*, cited in *Davoue* v. *Fanning*, 2 *Johns. Ch. R.* 252; *Bell* v. *Webb & Mong*, 2 *Gill* 163; *Callis* v. *Ridout*, 7 *Gill & Johns.* 1; *Spindler* v. *Atkinson*, 3 *Maryland R.* 409; *Bartholemew* v. *Leech*, 7 *Watts* 472; *Conger* v. *Ring*, 11 *Barb. Sup. Co. R.* 356.

A contrary doctrine was held in the case of *Fisk* v. *Sarber*, 6 *Watts & Serg.* 18, by a majority of the court, but Justice Rogers dissented from the decision, and in his opinion, which is marked by much learning and force of reasoning, I think he shows that the true rule is as laid down in the cases just cited.

It may be further urged that the legal estate in the farm

sold, was not in Mr. Bergen, and that, therefore, his situation in regard to the property, was not such as to prevent his becoming a purchaser. But the cases last cited show that the rule is applicable, in all its force and strictness, in such cases also. And the reason and policy of the rule, as above stated, upon the authority of the cases cited, show that it ought so to apply.

It was for the interest of the *cestui que trust* that the farm should, if possible, sell for as much as would, after paying prior liens, satisfy, not only the mortgage held by Mr. Bergen as trustee, but also the mortgages held by Quick and Mann, which were given to secure moneys held in trust for her. But if Mr. Bergen could come forward as a bidder at the sale, and buy the farm for himself, it would be for his interest that it should sell for as low a price as possible. And so his interest as an individual would come in conflict with the interest of his *cestui que trust*. It is not necessary to show that he acted unfairly in the purchase, or that the farm did not bring its full value; it is enough, according to the foregoing authorities, that he was in a position which exposed him to temptation, and which might induce him to act for his own benefit, and against the interests of the *cestui que trust*.

In the case of *Van Epps* v. *Van Epps*, 9 *Paige's R.* 237, the defendant held a second mortgage upon certain land, in trust for the complainant. The holder of the first mortgage foreclosed, and at the sheriff's sale the defendant bought the land and claimed to hold it for his own benefit. But the court decided that he could not do so, and that he could only hold it as trustee for the benefit of the *cestui que trust*.

Chancellor Walworth, in his opinion in that case, says : " The rule of equity which prohibits purchases by parties placed in a situation of trust or confidence, with reference to the subject of purchase, is not, as the defendant supposes, confined to trustees or others who hold *the legal title* to the property to be sold; nor is it confined *to a particular class of persons*, such as guardians, trustees, or solicitors. But it

is a rule which applies universally *to all* who come within its principle, which principle is, that *no party* can be permitted to purchase an interest in property, and hold it for his own benefit, where he has a duty to perform in relation to such property, which is inconsistent with the character of a purchaser on his own account."

That case, in its principal features, bears a strong resemblance to the present one, and the doctrines there laid down, and the reasoning on which they are founded, are, I think, sound and just, and applicable to the case now under consideration.

I am of opinion that Mrs. Staats, the complainant, is entitled to relief, and that upon her paying to Zaccheus Bergen, the amount he gave for the farm, and such further sums as he has expended in discharge of liens upon the same, or for repairs, or proper and permanent improvements, the defendants should be decreed to convey the farm to her, and that there should be a reference to a master to ascertain the amount so paid, unless the parties can agree upon it between themselves.

I respectfully recommend to the Chancellor to make an order and decree accordingly.