# CASES

ADJUDGED IN

# THE PREROGATIVE COURT

OF

# THE STATE OF NEW JERSEY.

## 1924.

---

EDWIN ROBERT WALKER, ORDINARY.

EDMUND B. LEAMING, VIVIAN M. LEWIS, JOHN H. BACKES,
JOHN GRIFFIN, JOHN E. FOSTER, MALCOLM G. BU-
CHANAN, JAMES F. FIELDER, ALONZO CHURCH,
ROBERT H. INGERSOLL AND JOHN BENT-
LEY, VICE-ORDINARIES.

---

In re estate of FLORENCE WALKER, deceased.

[Decided January 28th, 1924.]

1. The legislature cannot deprive a constitutional court of any of its jurisdiction, either by denying its use or authorizing another tribunal to employ it.

2. The prerogative court has constitutional sanction and cannot be shorn if any of its inherent functions or substantial jurisdiction.

3. The prerogative court has, and always has had, exclusive jurisdiction to entertain and pass the accounts of executors, administrators and guardians, whose letters have been issued by it; and, consequently, the provisions in *section 6* of the Orphans Court act (*Comp.*

619

*Stat. p. 3813*), that when any will has been admitted to probate or letters of administration or guardianship shall be granted by the ordinary, all subsequent proceedings relating to the administration and settlement of the estate of such testator, intestate or minor shall be had before the surrogate and orphans court of the county in which by law such probate might have been granted or letters issued, is invalid and unconstitutional.

---

On accounting by executor.

*Mr. Robert M. Boyd, Jr.,* for the accountant.

WALKER, ORDINARY.

The Montclair-Essex Trust Company, formerly the Montclair Trust Company, executor of the last will and testament of Florence Walker, late of the county of Essex, deceased, whose will was admitted to probate in the prerogative court on June 19th, 1922, has presented its first and final account as such executor for settlement, with the suggestion that under the Orphans Court act (*Comp. Stat. p. 3813 § 6*) this account should be filed in the orphans court, submitting, however, to the decree of this court in the premises. This presents the question as to whether the provisions of section 6, that when any will shall be admitted to probate, or letters of administration or guardianship shall be granted by the ordinary, all subsequent proceedings relating to the administration and settlement of the estate of such testator, intestate or minor *shall* be had before the surrogate and orphans court of the county in which by law such probate might have been granted or letters issued, is valid and constitutional. And this in turn will require a review of the power and authority of the prerogative court under the constitution and statutes.

In England, in former times, the probate of wills and granting of administration resided in the ecclesiastical courts. And in England the ordinary and judge of the prerogative court were different functionaries. But in New Jersey they are, and always have been, one and the same. *In re Dittman's Executors, 87 N. J. Eq. 297, 298.* By the commission and explanatory instructions given to Lord Cornbury, the first

royal governor, all the ecclesiastical jurisdiction of the province relating to the collating to benefices, granting licenses for marriages and probate of wills, was reserved to the governor. He was not only ordinary, but metropolitan of the province. For one hundred and forty years the governor or ordinary had been the only judge of probate known to the *constitution* of New Jersey. *In re Coursen's Will, 4 N. J. Eq. 408, 413.* A *statutory* jurisdiction was, however, exercised by the surrogates after a period of some eighty-two years, as will be hereafter shown.

In the instructions from Queen Anne to Lord Cornbury as governor of New Jersey in 1702 (*2 N. J. Arch. (1st series) 529 § 75*), which was then the organic law, it is laid down:

"And to the end the ecclesiastical jurisdiction of the said lord bishop of London may take place in our said province so far as conveniently may be, we do think fit that you give all countenance and encouragement to the exercise of the same, excepting only the collating to benefices, granting licenses for marriages and probate of wills, which we have reserved to you, our governor, and the commander-in-chief of our said province for the time being."

And Blackstone says:

"The prerogative court was established for the trial of all testamentary causes, where the deceased hath left *bona notabilia* within two different dioceses. In which cases the probate of wills belongs, as we have formerly seen, to the archbishop of the province, by way of special prerogative. And all the causes relating to the wills, administrations, or legacies of such persons are, originally, cognizable herein, before a judge appointed by the archbishop, called the judge of the prerogative court." *3 Bl. Com. 65.*

The first constitution of New Jersey (1776) denominated the governor as ordinary and surrogate general, and the present one (1844) the chancellor as ordinary or surrogate general and judge of the prerogative court. *In re Merrill, 88 N. J. Eq. 261, 269.*

As ordinary of New Jersey the governor possessed the prerogative powers of the ecclesiastical jurisdiction with reference to probate, administration and guardianship. *Griff. L. R. (N. J.) 1185 note 1, infra.* And this was the only probate jurisdiction exercised in New Jersey from the grant to

Lord Cornbury in 1702, until the first Orphans Court act was passed in 1784, a period of about eighty-two years. During this time, of course, accounting by executors and administrators was had in the prerogative court, which appointed them and out of which their letters issued. And this accounting feature was a matter of inherent jurisdiction.

"In the thirteenth century it was settled law that the executors * * * ought to prove his (decedent's) will in the proper court.

In *History of Eng. Law* (by *Pollock & Maitland*), *vol. 2 p. 340,* it is stated:

That court was the court of the judge ordinary, who was in the normal case the bishop of the diocese. Having established the will, they swore that they would duly administer the estate of the dead man, and they became bound to exhibit an inventory of his goods and to account for their dealings."

In *History of Eng. Law* (by *W. S. Holdsworth*), *vol. 3 p. 465,* it is stated:

"Finally, at the close of the administration, the ordinary compelled the representative to account. Though the testator or the ordinary could dispense with the inventory, neither could dispense with the liability to account. We can see from the extant accounts and inventories that the rules of the ordinary were a considerable safeguard."

In *Com. Dig. tit. "Prohibition". 138* § *G-21,* it is stated that the spiritual court may require an executor, or administrator, to account before them. Citing *1 Rol. 123, 358.*

In *1 Phillimore's Eccl. Rep. (Phillips & Bignell) 239* an executor was held bound to exhibit an inventory and account in the prerogative court of Cantabury at the suit of a party interested in the property for which he is executor.

*Archbishop of Cantabury* v. *Wills, 1 Salk. 315,* per Holt, C. J.: "It appears by the statute of Edward III. that an executor was compellable to account before the ordinary and so was an administrator.

In *Toll. Law (Exrs. & Admrs.) *491,* is the following:

*95 N. J. Eq.*                    In re Walker.

"In case a legatee or next of kin elect to sue in the spiritual court the executor or administrator must there exhibit an inventory of the property, if he has not done so before, and bring in an account." Citing *4 Burn Eccl. L. 425.*

Such being the law, inventories were filed and accounts passed in the prerogative court, in cases where that tribunal had issued the letters, during the colonial period, and also during the statehood of New Jersey, down to and including the present time.

In *Griff. L. R. (N. J.) 1185 note 1,* the author states:

"The jurisdiction of the governor as the ordinary of New Jersey, before the revolution and since, extended throughout the state, and a will, administration or guardianship proved or granted by himself or a surrogate * * * was valid, without regard to the place where the goods lay. Hence he possessed the prerogative powers of the ecclesiastical jurisdiction in these particulars."

*In re Coursen's Will, 4 N. J. Eq. 408, supra,* it was held by Chancellor Pennington, in the prerogative court, that the ordinary had the same original and appellate powers then (1843) that he ever had; that the original jurisdiction of the ordinary over the probate of wills and the granting of letters of administration was general and full and not limited and special, and that the acts of 1784 and 1820 are merely declaratory so far as they attempt to specify the subjects of the jurisdiction of the ordinary or his surrogates. And the learned chancellor said (at *p. 416*) that the original jurisdiction of the ordinary was not taken away or impaired by the act of 1828, which authorizes any surrogate to grant letters testamentary upon an exemplified copy of a foreign will; that it did not in the least interfere with the general *ex officio* powers of the ordinary. And he said (at *p. 418*) that notwithstanding the complete original jurisdiction which the ordinary had in all cases of probate and administration, his jurisdiction was concurrent with that of his surrogates, and that whenever a surrogate had obtained cognizance of a particular case the ordinary could not interfere. That, of course, meant that when probate or administration had been

applied for to a surrogate the ordinary could not assume jurisdiction of the cause to the exclusion of the surrogate.

The act of 1784 was entitled "An act to ascertain the power and authority of the ordinary and his surrogates, to regulate the jurisdiction of the prerogative court and to establish an orphans court in the several counties of this state." *Pat. L. p. 59 § 1,* provides that from and after the passing of that act the authority of the ordinary shall extend only to granting of probate of wills, letters of administration, letters of guardianship and marriage licenses, and to the hearing and finally determining of all disputes that may arise thereon. *Section 7* provides that the orphans court shall have full power and authority respecting the allowance of the accounts of executors, administrators, guardians or trustees audited by the surrogate as thereinafter directed, and *section 16* provides that the surrogate shall audit and state the accounts of executors and administrators exhibited to him and report the same to the orphans court. This, I take it, meant accounts of executors whose letters were granted by the surrogates or orphans courts.

It cannot be contended that these provisions of the act of 1784 divested the ordinary of the power of entertaining and passing accounts of executors, administrators and guardians in the prerogative court, and that it vested that jurisdiction in the orphans court in cases where the letters had issued out of the prerogative court. By every rule of construction the grant was simply one of power to the orphans court, a statutory tribunal, to take cognizance of accounting in cases where the surrogates had issued the letters, acting alone, or on its orders. The orphans court being a statutory court in derogation of the powers of the courts established by the constitution, it is to be restrained in the exercise of its powers to the words of the statute. *Ludlow* v. *Ludlow, 4 N. J. Law *189, 191.* And this clearly would restrain the orphans court to the passing of accounts where it had ordered the issuance of the letters to the accountants, or the surrogate had issued them in the exercise of his own jurisdiction. The restriction of the powers of the ordinary in the act of 1784, in my

opinion, is to restrain his *jurisdiction* only to the subjects mentioned, namely, probate, administration and guardianship, and not to provide that his powers shall be exhausted upon issuing the letters, but leaving him the full ecclesiastical jurisdiction over accounting and all other matters incident to the powers mentioned.

A grant of jurisdiction implies the necessary and usual incidental powers essential to effectuate it, and every regularly constituted court has power to do all things that are reasonably necessary for justice within the scope of its powers. *15 C. J. 810 § 108.* A court which granted letters testamentary or of administration is generally the proper court to exercise jurisdiction in the settling of the accounts of the executor or administrator. *24 C. J. 940, note 60 p. 941.* Of course the court of chancery will take jurisdiction of an accounting in a proper case, and thus deprive either the prerogative or the orphans court of their jurisdiction in the premises. In *Gillen* v. *Hadley, 75 N. J. Eq. 602,* Vice-Chancellor Howell said that it appeared from the opinion of Vice-Chancellor Pitney (*72 N. J. Eq. 505*) that proceedings were pending in the prerogative court on behalf of trustees to have their account stated and passed, and while the prerogative court, which was the court in which the will was probated, was a proper jurisdiction for entertaining accounting, yet seven days before the accounting proceedings were begun in that court the bill in the instant case was filed, so that the court of chancery obtained jurisdiction of that portion of the subject-matter of the bill, prior to the filing of the account in the prerogative court. This case was affirmed by the court of errors and appeals in a *per curiam* which in nowise criticised the observation of the vice-chancellor as to jurisdiction of the prerogative court in the matter of an accounting, where probate was granted in that tribunal.

If the ordinary's jurisdiction was restricted to the granting of probate, letters of administration and guardianship, and if he could take no further step in those matters, then he could not punish for contempt, which it has been expressly held in this court he has power to do. See *In re Merrill, 88*

*N. J. Eq. 261.* And Chancellor Pennington (*In re Coursen's Will, supra*), speaking to the question of a *caveat* against proving a will before the ordinary, said that a *caveat* is incidental to all ecclesiastical courts, thus asserting that the prerogative court exercised the ecclesiastical jurisdiction and not strictly a statutory jurisdiction, as, in fact, elsewhere in the opinion, he decided that it did. No special form of words is necessary to confer jurisdiction. If the design to do so is fairly to be gathered from the act, it is sufficient. *McLorinan* v. *Ryno, 49 N. J. Law 603, 606.*

It is stated in *1 Bouv. Law Dic.* (*Rawle's rev.*) *634,* that the jurisdiction of the ecclesiastical courts, generally speaking, extended to matters concerning the order of clergy and their discipline; also to such affairs of the laity as concerned the health of the soul; also cases of marriage and divorce and testamentary causes. It will be recalled that Queen Anne's instructions to Lord Cornbury were to encourage the ecclesiastical *jurisdiction* of the bishop of London, excepting only the collating to benefices and granting of licenses for marriage and probate of wills, which were reserved to the governor (Cornbury); and it will also be observed that the act of 1784 still further restricted the governor's reserved jurisdiction, for it took away the collating to benefices, while enlarging it in respect to granting letters of guardianship.

The title of the act of 1820 (*Rev. 1821 p 776*) is identical with that of the act of 1784, and the first section of the act of 1820 is the same as the first section of the act of 1784, except that the act of 1820 omits the granting of marriage licenses as an authority of the ordinary. The act of 1820, in section 30, likewise provides that the surrogate shall audit and state the accounts of executors and administrators exhibited to him. By the act of 1820 the act of 1784, and sundry other acts, were repealed.

In the Orphans Court act of 1874 (*Rev. p. 495*) it is provided in section 7 that when any will shall be admitted to probate, or letters of administration or of guardianship shall be granted by the ordinary, all subsequent proceedings relating to the administration and settlement of the estate of

such testator, intestate or minor, *may* be had before the surrogate and orphans court of the county in which by law such probate might have been granted or letters issued; but before any such proceeding shall be had a transcript of the will, &c., shall be filed in the surrogate's office; and provided, nevertheless, that the inventory of any administrator *pendente lite* appointed by the prerogative court shall be exhibited to the register, and his account settled before the ordinary in that court. In the Orphans Court act (*Rev. of 1898, P. L. p. 715; Comp. Stat. p. 3813*), it is provided in section 6 that when any will shall be admitted to probate, or letters of administration or of guardianship shall be granted by the ordinary, all subsequent proceedings relating to the administration and settlement of the estate of such testator, intestate or minor, *shall* be had before the surrogate and orphans court of the county in which by law such probate might have been granted or letters issued, provided, nevertheless, that the inventory of any administrator *pendente lite* appointed by the prerogative court shall be exhibited to the register, and his account settled before the ordinary of that court.

Thus it appears that in the Revision of 1874, for the first time, it was permitted that an account *might* be settled in the orphans court where the letters had issued from the prerogative court, and in the Revision of 1898 it was commanded that an account *shall* be settled in the orphans court where the letters had issued from the prerogative court. These provisions, I take it, are clearly unconstitutional. Of course, we are concerned now only with section 6 of the Revision of 1898. And I here call attention to the fact that these very acts of the legislature recognize accounting in the prerogative court in some cases, namely, in the case of administrators *pendente lite* appointed by that court. And, furthermore, in the Revision of 1874, it is provided in section 5 that all powers and authority granted by that act to the surrogates and orphans court in relation to the administration of estates of testators, intestates or minors, and the settlement of accounts of executors, administrators, guardians

or trustees, may be exercised by the ordinary, in the administration and settlement of estates, where the will shall be admitted to probate or letters of administration or of guardianship granted by the ordinary.

The question presently decided has already been passed upon in this court, though not in any written opinion. The decision was made in the matter of the accounts in the estate of Thomas A. Sperry, deceased (New Jersey prerogative court, file No. 1397), whose will had been proved in this court. An exception was filed, as follows:

"This court has no jurisdiction to entertain an accounting proceedings of the estate of the decedent in view of the exclusive jurisdiction over accounts of executors and trustees of the orphans court under the provisions of section 6 of the Orphans Court act."

A motion was made to strike out the exception, and on February 26th, 1916, after hearing, it was ordered that the exception be struck out, dismissed and overruled, and the account was allowed. The decree was made by the ordinary on the advice of Vice-Ordinary Backes.

That this court does not content itself with probating wills and granting administration, but that it asserts its jurisdiction to require an inventory and an account in all cases, is evidenced by the fact that every executor takes an oath that he will make and exhibit into the register's office of the prerogative court, a true and perfect inventory of all and singular the goods, chattels and credits of the deceased, and that he will well and truly account when thereunto lawfully required; and the bond of every executor provides that he shall make such inventory and exhibit it into the register's office within three calendar months, and, further, shall make a just and true account of his administration within twelve calendar months, and the rest and residue of the goods, chattels and credits which shall be found remaining upon the account of such administration, the same being first examined and allowed by the ordinary, shall deliver and pay unto such person or persons respectively as is, are or shall by law be entitled to receive the same.

These requirements were contained in the oath of an executor and the bond of an administrator in earliest colonial times in this state, as well as at the present. In fact, there has never been any other sort of qualification and obligation by executors and administrators. This I have ascertained by an inspection of such oaths and bonds filed in the register's office during the colonial period. See the *facsimile* of the form of letters testamentary and of administration by Governor (Ordinary) Morris, prefixed to *23 N. J. Arch.* (*first series*), in which these requirements of inventory and accounting are contained.

The constitution of New Jersey, 1844 (*art. 6 § 1 ¶ 1*), provides that the judicial power shall *inter alia* be vested in a prerogative court.

In *Harris* v. *Vanderveer's Executor, 21 N. J. Eq. 424,* Chief-Justice Beasley, speaking for the court of errors and appeals (at *p. 434*), said: "The prerogative court has constitutional sanction, and according to the principles already propounded (in the opinion), cannot be shorn of any of its inherent functions or substantial jurisdiction."

In *Flanigan* v. *Guggenheim Smelting Co., 63 N. J. Law 647,* the court of errors and appeals, speaking by Judge Adams, said (at *p. 651*): "It has been held that the legislature cannot constitutionally deprive the supreme court of its exclusive right to issue, as heretofore, a prerogative writ, either by denying the use of such writ or by creating in another tribunal a co-ordinate authority to employ it."

Of course, the reasoning applied to the supreme court, that the legislature cannot deprive it of the right to issue its prerogative writ, either by denying its use or creating in another tribunal a co-ordinate authority to employ it, applies equally here, for the legislature cannot deprive the prerogative court of the right to take cognizance of accounting in cases where it has issued letters testamentary or of administration or of guardianship—a power inherently enjoyed by it and constitutionally saved and protected to it.

In re Walker. 95 N. J. Eq.

Upon the authorities, therefore, I am clearly of opinion that the instructions of Queen Anne to Lord Cornbury were not a grant of merely naked powers to probate wills and issue letters testamentary and of administration, without more, but a grant of the full and complete ecclesiastical jurisdiction in those particulars, including, of course, the power to entertain and compel accounting before the ordinary, where he had issued the letters; that the act of 1784 did not restrict the power of the ordinary to the mere granting of letters, but limited the *jurisdiction* only as to the *subjects* over which it was made to extend, namely, to granting of probate and issuance of letters testamentary and of administration, &c., and while the act of 1820 took away the granting of marriage licenses by the authority of the ordinary, it left the prerogative court plenary jurisdiction over the subjects thereby recommitted to it, including probate powers; that the acts of 1784 and 1820, being in derogation of the inherent powers of the prerogative court, restricted the orphans courts in the exercise of their powers to the words of the statute, and those courts were confined to the powers by the acts bestowed, namely, a concurrent jurisdiction with that of the ordinary to grant probate, administration, &c., without in anywise curtailing the powers of the ordinary over the accounting of executors and administrators whose letters had been issued by him; that section 7 of the act of 1784, *permitting* proceedings subsequent to the issuance of letters by the ordinary to be had before the surrogate and orphans court was, and section 6 of the act of 1898, *compelling* such subsequent proceedings to be so taken is, an attempt to deprive the ordinary of his constitutional jurisdiction, and, consequently, null and void.

The result reached is that the prerogative court is the only tribunal in which the executor of Miss Walker may lawfully account, as the provisions of the Orphans Court act requiring such accounting there is an invasion of the jurisdiction of this court, and, therefore, unconstitutional and void.