This is an appeal from a decree of the orphans court of Union county, taken by a life tenant and four remaindermen. *Page 193 
The appeal argued is directed to five matters, wherein it is alleged that the decree is erroneous.
The proceedings below arose by reason of exceptions filed to the account of Albert F. Bender, as substituted administrator and trustee with the will annexed of Mary Bender, deceased.
Upon the filing of the exceptions the matter was referred to a special master for the taking of testimony and thereafter the exceptants also filed a petition for discovery and relief in the orphans court, which matter was also referred to the same special master, and it was on the reports of the special master in these two proceedings that the orphans court based its decree.
On the final hearing of the appeal the exceptants and appellants, conceiving that the matter came before the court denovo, introduced evidence other than that adduced before the master, either on the hearing on the exceptions or the petition for discovery, and in connection with this newly adduced testimony, now urge that they are entitled to relief that they did not ask for in the orphans court, as will more fully appear in disposing of the grounds for appeal now under consideration.
The first point argued is directed to a transaction whereby the estate of Mary Bender acquired a participating interest of $19,300 in a $30,000 mortgage, which mortgage was executed and delivered by the Bender Holding Corporation to Albert F. Bender, trustee. This mortgage covered ninety vacant lots in Linden, New Jersey, which property, the evidence discloses, Mr. Bender personally purchased in 1921 at foreclosure sales, the ninety lots being a part of a total of some five hundred lots so purchased by Mr. Bender, who held title thereto until 1924, when he transferred the title to the Bender Holding Corporation, which corporation was created by Mr. Bender for the purpose of taking title to this real estate, as well as other holdings of Mr. Bender, who owned all the common stock of the corporation, with the exception of qualifying shares held by "dummy" stockholders. Mr. Bender frankly says that he was in complete charge and sole dictator of the affairs of the corporation and that there was no common *Page 194 
stock outstanding other than that owned by him or controlled by him through the "dummy" incorporators, with the exception of one hundred and ten shares of preferred stock which he had sold to about sixty investors and which he had guaranteed as to the payment of interest and principal.
From the above it appears that at the time the mortgage in question was taken, the transaction was a bond and mortgage by the Bender Holding Corporation to Bender, trustee, and Bender, trustee, drew from the estate $19,300 and deposited this amount in an account which he calls "Attorney's Account." On the date of this deposit, Bender then transferred the fund from the "Attorney's Account" to his "Client's Investment Account" and again, on the same day, September 21st, 1928, he drew a check to the order of Albert F. Bender, trustee, which was endorsed over to Albert F. Bender, "Attorney's Account." Then, having the money in his "Attorney's Account" he drew checks to the order of the Bender Holding Corporation, as follows:
"1928
 9-21- To proceeds of mortgage made by The Bender
 Holding Corporation to Albert F. Bender,
 Trustee, 1 yr. 6%. Covers: 3 tracts in
 Linden, New Jersey ...................... $30,000.00
 9-28- Ck. to Bender
 Holding Corp. No. 36421 ....... $500.00
10-9 36458 ....... 1,100.00
10-16 36471 ....... 4,200.00
11-2 11981 ....... 300.00
12-3 36594 ....... 3,000.00
12-14 36649 ....... 600.00
12-24 36671 ....... 3,000.00
1929
 3-1 36866 ....... 3,000.00
 3-19 36921 ....... 200.00
 3-30 36948 ....... 100.00
 4-12 36981 ....... 3,100.00
 4-15 36986 ....... 200.00
 6-21 37170 ....... 3,000.00
10-4 37459 ....... 4,000.00
10-4 37460 ....... 3,000.00
10-11 12073 ....... 700.00
 ___________ $30,000.00
 $30,000.00"
 *Page 195 
The evidence discloses that the mortgage in question became due on September 28th, 1929, at which time there was still $7,700 in the "Attorney's Account" of Albert F. Bender, which Mr. Bender transferred to the Holding Corporation in October, the last payment being October 11th.
It is true that the evidence discloses that those for whom the investment had been made received interest from the date of their investment, so that for a time, at least, they lost nothing by reason of the manner in which their trustee had handled the investment, but the manner in which the funds were handled demonstrates to what extent Mr. Bender was the owner of the Holding Corporation and is one of the items of evidence which conclusively shows that that corporation was merely the alterego of Mr. Bender, who became a creditor of the corporation in sums in excess of $200,000 and borrowed money at banks on the strength of his stockholdings in the corporation, and otherwise so dealt with its affairs that no other conclusion may be reached than that he and the corporation were one and the same, and if this be so to the full extent, then the holding of title by the corporation to the ninety lots secured by the $30,000 mortgage, in which the estate had a participation of $19,300, was exactly the same as if the title had been in Bender personally, and if this be so, then looking through the sham of the corporate form, Bender personally gave a $30,000 mortgage to Bender, trustee, and it follows that Bender, trustee, became mortgagee and Bender personally became mortgagor, and in such a situation Bender, trustee, was called upon, in limine, to determine whether or not Bender, trustee, should loan to Bender personally the trust funds, and whether or not the security which Bender personally offered to Bender, trustee, was sufficient, and thereafter, Bender, trustee, was called upon to determine just what Bender personally should be called upon to do if default occurred. Not only did Bender, trustee, have to determine in the first instance whether Bender personally was giving a mortgage of safety to Bender, trustee, but as time went on, Bender personally had to determine whether he would pay to Bender, trustee, interest as it fell *Page 196 
due, and if not, whether Bender, trustee, should foreclose, and if Bender, trustee, did foreclose, whether to enter judgment on the deficiency decree against his alter ego, and when the mortgage became due and Bender, trustee, still had in his hands $7,000 which he had not turned over to Bender personally, he had to determine whether to turn it over or refuse so to do.
The situation as above outlined is practically the same as that in McAllister v. McAllister, 120 N.J. Eq. 407; affirmed,121 N.J. Eq. 265, wherein John McAllister was complainant and Richard McAllister, his brother, was one of the trustees and was under the duty of setting up a trust fund by virtue of the terms of the will of the decedent, and "in setting up John's trust estate the trustee took as an investment a first mortgage in the sum of $100,000. * * * This mortgage was executed by Richard McAllister and his mother on the lands therein described * * *. The mortgagees therein named are Richard McAllister, John Casey and the Provident Life and Trust Company, `trustees for John McAllister, under the last will and testament of Richard McAllister, deceased.'" Supra, 409.
The court held in the above case that the investment so set up by the trustees could not stand but that the trustees should be surcharged and required to set up a new trust fund in favor of John.
The basis of the decision in the McAllister Case was the same as that which affords the basis for decision in the instant case and it is based on the principle "that the trustee should exclude all selfish interest in his administration of the trust and maintain undivided loyalty to the cestui" and that the principle "applies to investments as well as other trust transactions. Lending trust funds to himself obviously violates this rule, as does the purchase of securities from himself. 3Bogert on Trusts and Trustees 1947 § 612."
It would seem to be unnecessary to further cite authorities substantiating the principle of law as above announced. The most recent case, in addition to the McAllister Case, supra, is that of Vice-Chancellor Egan in Gates v. Plainfield Trust Co.,121 N.J. Eq. 460. *Page 197 
It is argued and was held below that the principle of law as above outlined does not go so far as to hold that one acting in a trust or representative capacity is personally responsible for any and every loss that ensues, merely and solely because he dealt with himself, but rather only in those instances where he put himself in a palpably conflicting position as between his own interest and the interest of his trust estate and by so doing permitted himself to obtain a profit or an advantage personally, at the expense or loss of the trust. I do not conceive this to be the law, but if it were, there is no question but that the evidence in the instant case discloses that the trustee, by this mortgage transaction, put himself in such a palpably conflicting position as above outlined, and it may be that he received a profit by so doing, but whether he did or not, under the law, as I understand it, makes absolutely no difference for, as said by Vice-Chancellor Backes in Shanley v. Fidelity Union Trust Co.,108 N.J. Eq. 564:
"The law demands of trustees the utmost fidelity. It does not tolerate personal dealing with the trust estate nor permit the making of a penny's profit. This rule is grounded in sound morals and is reflected in the supplicating words of the Lord's prayer, `lead us not into temptation.'"
It will be observed that the vice-chancellor held in that case that the law would not tolerate either one of two things on the part of its trustee, to wit, (a) personal dealing with the trust estate, or (b) the making of a penny's profit.
In the 1 Restatement of the Law of Trusts 435 § 170 sub-sec.H, this principle is thus clearly stated:
"The trustee violates his duty to the beneficiary if he sells to himself as trustee his individual property or property in which he has a personal interest of such a substantial nature that it might affect his judgment. It is immaterial that the trustee acts in good faith in purchasing the property for the trust, and that he pays a fair consideration. This is true whether he purchases for the trust property which he owns individually, or property owned by a firm of which he is a member, or property owned by a corporation in which he has a controlling or substantial interest."
In 3 Pom. Eq. Jur. 2473 § 1077, this rule is again succintly stated: *Page 198 
"This rule is of wide application, and extends to every variety of circumstances. It rests upon the principle that as long as the confidential relation lasts the trustee or other fiduciary owes an undivided duty to his beneficiary, and cannot place himself in any other position which would subject him to conflicting duties, or expose him to the temptation of acting contrary to the best interests of his original cestui que trust. The rule applies alike to agents, partners, guardians, executors and administrators, directors and managing officers of corporations, as well as to technical trustees. The most important phase of this rule is that which forbids trustees and all other fiduciaries from dealing in their own behalf with respect to matters involved in the trust, and this prohibition operates irrespectively of the good faith or bad faith of such dealing. It is therefore a gross violation of his duty for any trustee or director, acting in his fiduciary capacity, to enter into any contract, with himself connected with the trust or its management; such a contract is voidable, and may be defeated or set aside at the suit of the beneficiary."
See, also, Scott v. Gamble, 9 N.J. Eq. 218; Holcomb v.Executors of Holcomb, 11 N.J. Eq. 281; Staats v. Bergen,17 N.J. Eq. 297; McKnight Executors v. Walsh, 23 N.J. Eq. 136;Porter v. Woodruff, 36 N.J. Eq. 174; Henniger v. Heald,52 N.J. Eq. 431; Estate of Bernard Shanley v. Fidelity Union TrustCo., supra.
The trustee's version of such transactions as the two mortgages which have been discussed is this: He conducted an extensive business in investing money on mortgage security and handled hundreds of such investment accounts, either through his own name or that of one of his corporations and would often lend on mortgage in advance of knowing just where he would thereafter place the investment, and in such instances, while he took the mortgage either in his own name or in that of a corporation controlled by him, he did so with no intention of holding the investment any longer than until he found a place to finally place it. Even so, he violated the rule.
Unless there is an escape from the principles as above announced, the trustee, Mr. Bender, must be compelled to assume the burden of his illegal act and be required to reimburse hiscestuis for their loss, and the avenue of escape as selected by him is that the mortgagor was a separate corporate entity and that therefore the rule does not apply. *Page 199 
If such a contention as is above outlined is sustained by this court, then while a trustee may not legally have an adverse interest to that of his cestui, he may create a corporation and through it hold an adverse interest and escape the obligation of the principle and thus the corporation laws of this state would afford the temptation that the supplicant asked the Lord to keep him from.
3 Bogert on Trusts and Trustees 1520 § 484, says:
"Obviously if the trustee organizes a corporation to buy at his own sale, and is in control of that corporation, the sale to it ought to be treated as a mere subterfuge for a sale to the trustee himself."
The law is so clear in this state that equity will not be blindfolded by the corporate form but will pierce through it and determine the true standing of the parties and overthrow the form when equity demands it, that but few, if any, citations are necessary. Perkins v. Trinity Realty Co., 69 N.J. Eq. 723;affirmed, 71 N.J. Eq. 304; Breslin v. Fries-Breslin Co.,70 N.J. Law 274; New Jersey Car Spring and Rubber Co. v. Fields,85 N.J. Law 217.
It is argued by respondent trustee that appellants are estopped from thus attacking the action of the trustee with respect to this $19,300 investment because (a) by virtue of annual statements submitted by the trustee to the cestuis, they were advised of the investment; (b) the cestuis accepted the annual interest from 1928 to 1933, inclusive; (c) that Minnie J. Locher was one of the incorporators of the Bender Holding Corporation and also the agent of her mother, Louise Locher, and was secretary to Mr. Bender until 1925 and therefore is charged with knowledge that the Bender Holding Corporation was controlled by Mr. Bender and that she must have known that the $19,300 participation in the Bender Holding Corporation mortgage was the same as a mortgage from Bender personally.
The law with reference to estoppel is clear, and is set forth in the McAllister Case, supra, 413, 415, and elaborated on by Vice-Chancellor Egan in Gates v. Plainfield Trust Co., supra,487, 488. *Page 200 
In the McAllister Case, supra (at p. 413), this court quoting White v. Sherman, 168 Ill. 589; 48 N.E. Rep. 128 (atp. 132) said:
"In order to bind a cestui que trust by acquiescence in a breach of trust by the trustee, it must appear that the cestuique trust knew all the facts, and was apprised of his legalrights, and was under no disability to assert them. Such proofmust be full and satisfactory. The cestui que trust must be shown, in such case, to have acted freely, deliberately, and advisedly with the intention of confirming a transaction whichhe knew, or might or ought, with reasonable or or properdiligence, to have known, to be impeachable. His acquiescence amounts to nothing if his right to impeach is concealed from him, or if a free disclosure is not made to him of every circumstance which is material for him to know. He cannot be held to have recognized the validity of a particular investment unless the question as to such validity appears to have come before him."
The evidence adduced falls far short of satisfying these legal requirements. All it is even claimed to show is that Minnie Locher was the agent of her mother, Louise, and that by reason of her having been one of the incorporators of the Holding Company, she knew of its existence and of the corporate set-up, up until 1925, during which time she was in Mr. Bender's employ; that Mrs. Locher received interest from 1928 to 1933; both inclusive; that she received annual statements containing a list of assets, showing the $19,300 participation in the Bender Holding Company mortgage. There is nothing to show that Mr. Bender ever apprised the Lochers of their legal rights, i.e., that the mortgage investment was voidable at their suit, or that Mrs. Locher freely, deliberately and advisedly, with the intention of confirming the investment, acquiesced in it. Nothing to show that she knew or should have known that the investment was impeachable at his instance. It is true that the cestuis knew that the mortgagor was the Bender Holding Corporation and covered lots in Linden, New Jersey, but Bender never explained to them that the investment, in the eyes of the law, was the same as if *Page 201 
he was the mortgagor, and that he had an interest adverse to them.
The case of St. Paul Trust Co. v. Strong, 85 Minn. 1;88 N.W. Rep. 256, cited with quotation in the McAllister Case, is applicable.
The evidence discloses that on November 5th, 1928, Mr. Bender, individually, loaned to Mooney Company $6,000 and took back a first mortgage in his own name to secure the loan. On the same date Mr. Bender, individually, loaned the Mooney Company $2,500 and took back, in his own name, a second mortgage in that amount.
By assignment dated January 2d 1929, but acknowledged February 14th, 1929, Bender, as an individual, assigned the $6,000 first mortgage to Bender, trustee, while by assignment dated November 5th, 1928, but acknowledged February 14th, 1929, Bender assigned the $2,500 second mortgage to the Ben-Hor Corporation, another company in which Bender was attorney and director and was also the owner of twenty per cent. of its capital stock. So Bender, as trustee, became the holder of the first mortgage, and a corporation in which he was heavily interested was the holder of the second mortgage. Bender not only sold his own mortgage to himself as trustee, after having held that mortgage from November until the following February, and put the $6,000 in his own pocket, but he put himself in a position adverse to his trust in that upon default in the first mortgage he, as trustee, was called upon to decide whether to foreclose and thus wipe out the second mortgage. An impossible situation in the eyes of the law and subsequent events demonstrate the wisdom of the rule prohibiting a trustee thus to deal with a trust estate. There is no need for reciting the subsequent events. Suffice it to say that after long delay the first mortgage was foreclosed and the estate became the owner of the mortgaged premises.
It is argued that this court should not consider on this appeal any question other than the legality of the aforesaid $19,300 mortgage participation investment, because the other matters urged by the appellant were not the subject of an *Page 202 
exception in the orphans court and not passed upon on the argument of the exceptions, but that on the contrary, the only exception argued and passed upon was the legality of the aforesaid participation investment.
The answer to this is that on an appeal from the orphans court to this court the entire matter is before the prerogative courtde novo and the court has a right to consider not only the evidence adduced below but such additional testimony as it may desire to consider.
It is conceded by the respondent that the above principle is true but that it applies only to that class of cases in which the prerogative court has original, as well as appellate jurisdiction, and respondent says that the appeal in the case at bar is one taken from a decree of the orphans court made in discovery proceedings and that this court has no original jurisdiction to make an order for discovery. Be this as it may, the appeal herein is clearly not from a decree made in discovery proceedings but it is from a decree sustaining the legality of investments made by the trustee, as exhibited in his final account as such trustee, as well as a decree approving the account of the trustee in its entirety. It is true that the first step in the court below was the filing of the account and then the filing of the exceptions, followed by a reference to a special master to report on the exceptions and that thereafter the exceptants filed a petition for discovery and that that matter was then referred to a master, but the discovery proceedings were merely in aid of the exceptions to the account and the only purpose of the discovery was to gain information with respect to the accounts in order that proofs might be submitted which, in the opinion of the exceptants, justified the exceptions.
This being an appeal from a trustee's account, there can be no question but that this court has original jurisdiction over the account. See In re Walker, 95 N.J. Eq. 619, and Kayhart v.Whitehead, 77 N.J. Eq. 12; affirmed, 78 N.J. Eq. 580.
Point 3 as urged by the appellant is that the trustee should be denied a commission on this estate because of his breach *Page 203 
of trust, and should be directed to refund all moneys he appropriated as commissions without court order from the assets of the estate.
At the outset it should be noted that counsel for the exceptants requested the special master as follows: I "urge upon the court to approve the account as to receipts and disbursements but specifically except from its approval and in its decree the passing upon any investments shown in the account."
The above request on the part of counsel for the exceptants was made prior to the report of the master in the discovery proceedings and after the filing of the report of the special master on exceptions to the account, and while it constitutes a consent to a finding that the account of receipts and disbursements is correct, it has absolutely nothing to do with the question as to whether or not the trustee should be allowed commissions.
The question as to whether or not the trustee should be allowed commissions on his final accounting depends upon whether a survey of the manner in which he has handled the trust estate shows that he has been faithful to the trust. If he has, he should be allowed commissions. If not, they should be disallowed.
May it be said that a lawyer trustee, having full knowledge of his duties as such trustee, may be said to have been faithful to his trust when it clearly appears that he has borrowed money through his own corporation for his own use; that he has sold to his trust estate mortgages which he held in his own name; that he has invested a very substantial amount of the trust estate in his own real estate speculations, all with a result, as heretofore set forth, disastrous to the estate? Commissions to a trustee are allowed by way of compensation for faithful discharge of duty and it is a breach of trust for a trustee to make unauthorized investments and to do so "knowingly" is a willful and intentional breach of trust. Tuttle v. Gilmore, 36 N.J. Eq. 617 (at p.622).
In addition to the fact that the trustee has used the trust funds for his own benefit, we find that he is unable, at the *Page 204 
present time, to comply with the court's order of April 20th, 1936, that he turn over to the newly appointed trustees a sum in excess of $5,000 which he admits he owes the estate.
The fourth point argued by appellant has already been taken care of by the order of this court of April 20th, 1936, aforesaid, which includes the $3,300 item.
The fifth point relates to the question as to whether or not the $19,300 participation mortgage was a mortgage taken by the trustee on "unencumbered property," this question being raised by reason of the fact that at the time the trustee took the mortgage there was an outstanding assessment on the mortgaged property. In view of this court's finding that this investment was unauthorized, it is not necessary to further discuss point five.
The result is that the respondent must be surcharged as to the two mortgage investments aforesaid, together with interest thereon, and that commissions be disallowed on this accounting, and that counsel for appellants be allowed a reasonable counsel fee, to be paid by respondent. *Page 205